## UNITED STATES v. BARTRON.

District Court, D. South Dakota, N. D. November 12, 1929.

No. 596.

Olaf Eidem, U. S. Atty., and Frank G. McCormick, Asst. U. S. Atty., both of Sioux Falls, S. D.

Perry F. Loucks, of Watertown, S. D., for defendant.

ELLIOTT, District Judge. I have determined the issues in Re United States of America, plaintiff, versus Mary C. Bartron, defendant, in favor of the plaintiff and against the defendant.

There is no issue of fact presented. It is conceded that defendant filed an income tax return for the year 1919, with her husband, disclosing a tax in the sum of $1,624.58 upon income received by her from a partnership known as the Bartron Hospital Clinic, in which she and her husband, H. J. Bartron were equally interested. Her husband also filed an income tax return for the year 1919, and reported for tax purposes one-half of the net income of said partnership. Thereafter, upon a reaudit of the liability of the husband

of the defendant for income taxes for that year, it was determined by the Commissioner of Internal Revenue that this Clinic was not partnership property, but was the sole property of defendant's husband, and it was further held that the entire income of this Hospital Clinic should have been reported for tax purposes by the husband of defendant alone. The defendant had paid the taxes assessed against her, based upon her ownership of one-half of the income from said Clinic, and after said audit, the amount of the tax paid by her was, with interest thereon, refunded to her. Defendant's husband, H. J. Bartron, appealed to the United States Board of Tax Appeals from this determination of the Commissioner, and on April 19, 1926, the Board held that the Clinic was in fact and as a matter of law, partnership property and that the defendant, Mary C. Bartron, and her husband, H. J. Bartron, each owned a one-half interest therein, and that for tax purposes said partners had each properly reported one-half of the net income of said partnership. B. T. A. 1262.

No appeal was ever taken from this decision of the Board and the return of this defendant was reaudited and her liability for income taxes found to be in the amount of $1,769.78. Of this sum $1,624.58 had previously been assessed against her and paid by her, and had thereafter been refunded with interest in the sum of $443.62. The plaintiff instituted this suit for the recovery of the amount so paid by the government to the defendant.

It is conceded by all parties to this action that the record discloses without dispute that—

(a) A tax in the amount of $1,624.58 was due from the defendant for the year 1919.

(b) That the tax was assessed in 1920 and was levied upon income received by the defendant as her distributive share of partnership profits realized by the Bartron Hospital Clinic.

(c) That said tax was paid by the defendant.

(d) That thereafter, it was determined by the Commissioner of Internal Revenue that the entire profits of the partnership should have been included in the taxable income of H. J. Bartron, husband of the defendant, and that no tax was, therefore, due from this defendant.

(e) That the amount previously paid by the defendant as such taxes, and then lawfully due from the defendant to the plaintiff, was refunded, with interest thereon out of the Treasury of the United States.

(f) That the Commissioner of Internal Revenue erred in this determination and this Clinic was, as a matter of law and fact, a partnership and the defendant entitled to receive and did receive one-half of the net profits realized by said Clinic during the taxable year in question, upon which a tax in excess of the amount previously paid was lawfully due.

The position of the plaintiff is that this suit is instituted by the United States against the defendant to recover this money returned to her, with interest at 7 per cent. per annum, and that this is not a suit to recover an income tax claimed to be due, but is a suit to recover moneys erroneously refunded to the defendant out of the Treasury of the United States.

Defendant excepts to this position of the plaintiff, and urges that the defendant made her income tax report in connection with that of her husband for the year 1919, and claimed that she was a partner and should pay one-half of the total tax due upon the income for that year; that the Commissioner of Internal Revenue approved this report, and the defendant paid, in four installments during 1920, the amount of her tax thus imposed; that thereafter, in an effort to increase the amount of income tax to be paid to the government and to assess substantial penalties against the husband of the defendant, the Commissioner of Internal Revenue held that the defendant was not a partner and should not have reported any part of this income, and without demand upon her part this sum of money, with interest, was refunded to her in April, 1925. It is further urged by counsel for defendant that this act of the Commissioner wiped out the entire tax liability of the defendant; that this action on the part of the Commissioner was a determination that defendant was not liable for any tax, and thereupon her payment, with interest, was returned to her; that therefore there was no tax left against her, no assessment, and nothing due the government thereon.

It is further urged that, when this money was paid back to her, it was not a payment out of the Treasury of the United States of moneys belonging to the United States, but was a return to her of moneys which the Commissioner of Internal Revenue decided did not belong to the United States, and therefore was her money; that, while the husband of defendant appealed, no appeal was taken by the defendant herself. Defendant therefore stands upon the action of the Commissioner of Internal Revenue some time during the year 1926, determining that a tax for the year 1919, in the amount of $1,769.78, was due from Mary C. Bartron. He further urges that this is the first determination that constituted evidence of a tax on the records of the Bureau of Internal Revenue after the Commissioner had determined no tax was due and had paid back to the defendant her money.

I have stated thus fully the claims of the respective parties, because it occurs to me that the controversy here resolves itself almost wholly into the determination of what was actually done, and what the status of the parties was with reference to this particular fund, and finally what the nature of this proceeding really is.

Under the admitted facts, the defendant actually owed the United States for the year in question the tax that was duly levied and was actually paid. Through the action of the Commissioner of Internal Revenue an attempt was made to change the assessment of the defendant and her husband, and to burden him with the entire returns from the Clinic, and following that determination the United States paid to the defendant, and she received, the amount of money she had paid and interest thereon in the sums above stated. The husband of defendant appealed, and the tax commission held the Commissioner in error, and reduced the claim against the husband of the defendant to a tax upon his one-half of the income from the Clinic. This leaves the defendant as having paid her tax for the year in question to the government, and at the end of the prosecution of the appeal to the tax commissioner the husband of defendant paid the tax for his one-half of the income from this partnership property. In the meantime, however, the officer of the United States had paid from the Treasury of the United States the sum of money that had been paid by the defendant, together with interest thereon, and defendant had paid her income tax for that year, and the Commissioner of Internal Revenue had erroneously paid back to her the amount received from her, together with interest thereon.

 I am inclined to agree with the position of counsel for defendant, in that it is my judgment that when she paid this tax she canceled it, and there is no tax left against her for that year. Under these conditions plaintiff had erroneously returned to the defendant moneys that belonged to the United States that had been properly duly levied upon her income for that year, and under these circumstances the government now asserts its right to the return of its money erroneously paid to her, together with interest thereon at 7 per cent. per annum from the date of such

payment. It would seem, upon this statement of the situation, that, resting upon elementary principles, the plaintiff here has a right of action against the defendant for this money erroneously refunded to her out of the Treasury of the United States.

It is urged by the defendant that this was not money of the United States; that it was her money, but it is conceded that she had parted with it, and with the title to it, and that she at the time actually owed the income tax in payment of which she paid the money. By that payment and by that transfer of the title, it being a just tax, as was afterward held, the tax was actually paid, and the return of the money by the Commissioner of Internal Revenue did not restore the tax, and was simply the parting under mistake of fact and law, one or both, by this officer of the government with the moneys belonging to the government. I think it may be stated as a general rule of law that moneys improperly paid by its officers to persons not entitled thereto, whether such payments are made under a mistake of law or fact, or both, being in excess of the authority of the officer paying the same, or paid under an erroneous interpretation or application of the law, may be recovered by the government as moneys erroneously refunded out of the Treasury of the United States. I think it may further be said that such officers charged with the custody and paying out of moneys of the United States, in making a refund under such circumstances, do not finally determine the interest of the United States to the extent that it is estopped from thereafter requiring a return of such moneys so erroneously refunded.

"As a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where by misconstruction of the law under which they have assumed to act, unauthorized payments are made." Wisconsin Central Railroad Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399; Whiteside v. United States, 93 U. S. 247, 23 L. Ed. 882; Hawkins v. United States, 96 U. S. 689, 24 L. Ed. 607, and cases cited.

In the latter case it is suggested that "the question is not presented as between the government and its officer, or between the officer and the recipient of such payments, but as between the government and the recipient, and is then a question whether the latter can be allowed to retain the fruits of actions not authorized by law, resulting from an erroneous conclusion by the agent of the government as to the legal effect of the particular statutory law under or in reference to which he is proceeding."

It has been held: "It is immaterial whether tax refunds sought to be recovered by the government were made under mistake of law or mistake of fact, but the only question is whether they were paid without legal authority or legal liability therefor and the repayment to a taxpayer of a sum paid for taxes is not a final determination of his right to receive it, but the government may recover as for money had and received all payments illegally paid by a public officer, and decisions of executive officers in making such payments are not judicial and are not binding on court." Talcott v. United States (C. C. A.) 23 F.(2d) 897; United States v. Burchard, 125 U. S. 176, 8 S. Ct. 832, 31 L. Ed. 662.

A similar situation to the one at bar arose in United States v. Standard Spring Manufacturing Co., 23 F.(2d) 495, 496, in which United States District Judge Sanborn, of the Fourth Division in the District Court for the District of Minnesota, held in part as follows:

"There are only two questions involved in this case: (1) Whether the United States can recover a refund of a tax made in error. (2) Whether the judgment in a former suit brought by the United States against the defendant, on the theory that it had failed to pay the tax refunded, creates an estoppel. The obligation to pay the tax referred to in this case was created by the laws of the United States. No officer of the government could waive the right of the government to receive the tax or could refund the tax when paid. It was conclusively established in this case that the Commissioner of Internal Revenue erroneously allowed the claim for a refund, and that the defendant received from the government $2,459.27, by virtue of that allowance, which it was not entitled to. The law therefore implies an obligation to return this money illegally refunded."

This is exactly the situation presented here, as I understand it, and with the additional situation that the government might have been said in that case to have elected to stand upon its right to recover the money as a tax, and, having lost that decision, was then estopped to claim that it still had the right of action for money had and received.

It is sufficient answer to the contention of the defendant, that this is an action for the recovery of a tax, to simply point out the fact that the government cannot be dictated to by the defendant as to what action it shall take in the preservation of its rights, and,

unfortunately for the defendant, the government has not taken that position. The government stands upon its right to recover the moneys thus refunded as moneys belonging to the United States erroneously refunded. It may be added that prior to the enactment of the Revenue Act of 1928 there was no limitation upon the United States for the commencement of a suit to recover money illegally paid out. Statutes of limitation do not run against the government, and it is not bound by any statute of limitation, unless Congress has clearly manifested its intention to apply a specific limitation to the government; and "it matters not how long a time elapsed before the error in making the overpayment was discovered or how long the attempt to recover it was deferred. The statute of limitations does not ordinarily run against the United States and would not present a bar to a suit for the amount. See United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194." Grand Trunk Western Railway Co. v. United States, 252 U. S. 112, 40 S. Ct. 309, 312, 64 L. Ed. 484.

"It is settled beyond doubt or controversy, upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided, that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations unless congress has clearly manifested its intention that they should be so bound." United States v. Nashville, Chattanooga & St. Louis Railway Co., 118 U. S. 120, 6 S. Ct. 1006, 1008, 30 L. Ed. 81, and citations.

There are no limitations with respect to a suit of this character prior to 1928 Revenue Act, and section 610 (26 USCA § 2610) provides that suits for the recovery of moneys erroneously refunded may be instituted in the name of the United States, but only if such suit was begun within two years after the making of such refund, or prior to May 1, 1928, whichever is the later date. By the express terms of this section, it has no application to this suit, which was instituted prior to May 1, 1928.

Defendant's position with reference to question of limitations is untenable, as this is not a suit to recover taxes, but to recover moneys of the United States erroneously returned to the defendant. The admitted facts in this case, in my judgment, clearly bring it within the rules announced in Talcott v. United States, and also United States v. Standard Spring Manufacturing Co., supra,

and plaintiff is therefore entitled to recover the amount so erroneously paid to the defendant, with interest thereon at 7 per cent. per annum from the date of payment.

Order for judgment may be prepared and forwarded, with proper exception to the defendant.