COMMISSIONER OF INTERNAL REVENUE v. DYER.

No. 124.

Circuit Court of Appeals, Second Circuit.
Jan. 14, 1935.

Frank J. Wideman, Asst. Atty. Gen., and James W. Morris and Lucius A. Buck, Sp. Assts. to Atty. Gen., for petitioner.

H. B. McCawley and Warren W. Grimes, both of Washington, D. C., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

For each of the years in question the Commissioner disallowed a deduction claimed by the taxpayer as a loss sustained on a sale of shares of stock, and determined a tax deficiency. Upon appeal by the taxpayer, the Board of Tax Appeals held that the losses were proper deductions and reduced the deficiencies accordingly. The Commissioner seeks a reversal of this order. The case was heard by the Board upon stipulated facts.

In 1927 the respondent, Mr. Dyer, and six others were all the stockholders and directors of Lamborn & Co. This corporation owned all the capital stock of Elanco Realty Corporation, hereafter called Elanco. On November 30, 1927, the seven stockholders of Lamborn & Co. sold to Elanco out of their individual holdings 6,700 shares of the preferred stock of Lamborn & Co.; each seller participating in the sale according to the percentage of his ownership of the whole issue of such preferred stock. Mr. Dyer, who owned 15 per cent. of the issue, contributed 1,005 shares of the 6,700 sold. The directors of Elanco, by a resolution of November 30, 1927, had authorized the purchase of 6,700 shares of Lamborn & Co. stock at the actual value of said stock as of the close of busi-

ness on that day, payment to be made by Elanco's notes. The sale price to Elanco was $59.42 per share, and each seller received Elanco's note for the sum due him payable January 3, 1928, and bearing interest at 4½ per cent. per annum. The transfer was recorded on the books of Elanco, and the stamp taxes, both federal and state, were paid. By resolution of January 3, 1928, the directors of Elanco authorized the sale of 6,700 shares of the preferred stock of Lamborn & Co. at the actual value thereof as of the close of business December 31, 1927. Each seller repurchased from Elanco the same number of shares he had previously sold but at an advance of 20 cents per share. The outstanding notes of Elanco were canceled, and the profit amounting to $1,340 was included in Elanco's income tax return for 1928. The shares which Mr. Dyer contends that he sold to Elanco on November 30, 1927, were part of 2,850 shares which he had acquired in 1928 at a cost of $90.407 per share. Relying upon section 214 (a) (5) of the Revenue Act of 1926 (44 Stat. 26), 26 USCA § 955 (a) (5), he claims the right to deduct from his gross income for 1927 the loss realized by the sale of November 30th, amounting to $37,172.92. The propriety of this deduction, which the Board allowed, is the question in dispute.

The same question arises as to the year 1928. Section 23 (e) (2) and section 118 of the Revenue Act of 1928 (45 Stat. 800, 826), 26 USCA §§ 2023 (e) (2), 2118. On November 30, 1928, Mr. Dyer and four of the same associates went through similar formalities with reference to 6,365 shares of preferred stock of Lamborn & Co. Mr. Lindgren who had participated in the 1927 transaction had in the meantime sold out to two of his former associates. Apparently Mr. Hutchings, the other former participant, had died in the meantime. His percentage of interest in the entire issue was 5 per cent. and this explains why only 6,365 shares, instead of 6,700 shares, were involved in the 1928 transaction. The Elanco directors again passed a resolution for the purchase and later one for the sale of 6,700 shares. The sale price to Elanco was $48.8669 per share, and was again evidenced by its notes, bearing interest at the rate of 5½ per cent. per annum. When the notes matured on January 2, 1929, each seller again repurchased the same number of shares as he had sold to Elanco. The number of shares of Mr. Dyer involved in the 1928 transaction was again 1,005. He claims as a loss the difference between the cost to him in 1923 and the sale price to Elanco, amounting to $47,778.79.

 It is undoubtedly true that the motive inducing Mr. Dyer and his associates to "sell and deliver" their stock to Elanco was to reduce taxes by claiming losses on the sales. This, however, despite the appellant's argument to the contrary, is not enough to condemn the transactions. Any one is privileged to arrange his affairs so that his taxes shall be as low as the statute permits. Helvering v. Gregory, 69 F.(2d) 809, 810 (C. C. A. 2), affirmed 55 S. Ct. 266, 79 L. Ed. ——, Jan. 7, 1935; United States v. Isham, 17 Wall. 496, 506, 21 L. Ed. 728; Bullen v. Wisconsin, 240 U. S. 625, 630, 36 S. Ct. 473, 60 L. Ed. 830; Iowa Bridge Co. v. Commissioner, 39 F.(2d) 777, 781 (C. C. A. 8). But the statute does not permit deduction of a loss claimed to have been sustained in a sale of stock where within thirty days before or after the date of such sale the taxpayer has entered into a contract or option to acquire substantially identical property and the property so acquired is held after such sale. Section 214 (a) (5), Revenue Act of 1926, 26 USCA § 955 (a) (5); section 118, Revenue Act of 1928 (26 USCA § 2118). In the case at bar, the inference is inescapable that "repurchase" of the stock by return of the notes was part of the original plan, and that from the beginning the transferors intended to reacquire their shares in this manner. Could any doubt exist, it is laid to rest by the repetition of the ritual in the second year. The associates had the power through their complete control of Lamborn & Co., which in turn completely controlled the Elanco corporation, to carry out this intent. It is apparent they were acting in concert and had a mutual understanding that the transfers would be rescinded when the notes came due. Under these circumstances it is as though there had been an agreement between all the transferors and Elanco that the sale should be coupled with a contract, or at least an option, to repurchase. The transferors' ownership of their stock was not so completely terminated as to constitute the realization of losses by reason of sales. Compare Esperson v. Commissioner, 49 F.(2d) 259 (C. C. A. 5). In this aspect, the fact that with respect to the 1927 transaction a profit was reported by Elanco is immaterial.

There is some dispute as to just what issue was presented to the Board. In a colloquy between the Board member and the Commissioner's attorney, the following questions and answers appear:

"You contend it is not a real transaction, or a real transfer? Yes; that is it, exactly.

"You are not attacking the good faith? No; that is not in issue."

These two statements seem somewhat contradictory. They may be harmonized by reading them as meaning that there was an actual transfer and delivery of the stock to Elanco, but the transaction was not of the sort by which a loss is realized. For reasons already stated, we hold that it was not.

The order is reversed, with directions to decree the asserted deficiencies.