## ST. LOUIS UNION TRUST CO. v. UNITED STATES.

### No. 10210.

Circuit Court of Appeals, Eighth Circuit

Feb. 14, 1936.

STONE, Circuit Judge, dissenting.

Daniel N. Kirby, of St. Louis, Mo. (Everett Paul Griffin and Charles Nagel, both of St. Louis, Mo., on the brief), for appellant.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Lucius A. Buck, Sp. Assts. to the Atty. Gen., and Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for the United States.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment of the District Court entered September 17, 1934, in an action commenced January 27, 1928, by the United States against Edward Mallinckrodt, Sr., to recover additional income taxes and interest for the year 1920.

Edward Mallinckrodt, Sr., will be hereafter referred to as the taxpayer. He died February 1, 1928, and the St. Louis Union Trust Company, executor of his will, was duly substituted as defendant in the action.

A jury was duly waived and the case tried to the court June 6 and 7, 1933. Final judgment was rendered for plaintiff September 17, 1934, from which judgment the present appeal was taken.

The following facts appear to be undisputed: The taxpayer filed his income tax return for the year 1920 showing a tax due of $7,206.49 which was duly assessed, and paid by the taxpayer. Upon audit of this return, the Commissioner of Internal Revenue determined that the tax liability of the taxpayer for 1920 was greater by $61,171.93 than the amount returned, and notified the taxpayer of said deficiency.

January 29, 1925, the taxpayer appealed to the United States Board of Tax Appeals. The appeal was heard May 28, 1925.

The Board of Tax Appeals filed its opinion and its findings of fact September 27, 1926, and thereafter, on January 28, 1927, entered its order of redetermination which contained, among other language, the following: "That for the year 1920 there is no deficiency, but, on the other hand, there is an overassessment and an overpayment in the amount of $3,403.24."

After the order of the Board of Tax Appeals redetermining the deficiency (January 28, 1927), there was apparently not entire harmony of action in the several subdivisions of the office of the Commissioner of Internal Revenue with reference to the matter.

Action by one subdivision (July, 1927), resulted in there being sent to the taxpayer a certificate of overassessment, and a refund by a United States Treasury check in accordance with the order of redetermination.

Action by another subdivision resulted in nonacquiescence by the Commissioner (November, 1927), in the decision of the Board of Tax Appeals; and authorization (January, 1928), of the present suit, which was commenced January 27, 1928.

When the controversy was before the Board of Tax Appeals, it was heard and determined upon a stipulation of facts between the parties by their respective attorneys. Upon the trial of the present case in the United States District Court, the stipulation of facts was introduced and also, under objection, other evidence.

Passing to the particular transaction out of which the present controversy arose, the facts, practically undisputed, are substantially as follows, as found by the trial court:

"Edward Mallinckrodt, Sr., organized and established a 'Trust' April 17, 1918, for the benefit of his son, Edward Mallinckrodt, Jr. and the son's family. The son and the St. Louis Union Trust Company were appointed Trustees of the Trust, the donor, Edward Mallinckrodt, Sr., reserving unto himself the right to make donations to the Trust from time to time as he saw fit, and further providing that 'one of the express duties of the Trustees under this Trust, from time to time, [is] to abide by and carry out any written directions which the Trustor may give them in respect of the management or preservation of the trust estate, or the proper action to be taken by the Trustees in carrying out 'The Arcade Building Enterprise. * * *' That on or about December, 1920, said Ed-

ward Mallinckrodt, Sr., was the owner of $81,500, face amount of Hudson & Manhattan Series A, 5% First Mortgage Bonds of the fair market value at March 1, 1913, of $70,274.69; 100 shares of Commonwealth Trust Company stock of the fair market value at March 1, 1913, of $37,000.00; 168 shares of stock of the New England Equitable Insurance Company of the fair market value at March 1, 1913, of $52,000.00; 500 shares of Hargadine-McKittrick Dry Goods Company First Preferred stock of the fair market value at March 1, 1913, of $39,000.00; 238-2/21 shares of Second Preferred Hargadine-McKittrick Dry Goods Company stock of the fair market value at March 1, 1913, of $9,047.61; and 375-100/357 shares of Hargadine-McKittrick Dry Goods Company common stock of the fair market value at March 1, 1913, of $3,378.00.

"Wishing to dispose of these stocks in the latter part of 1920, particularly for the purpose of establishing a loss upon them, the taxpayer in company with his secretary went to the office of G. H. Walker & Company, a brokerage house of St. Louis usually patronized by the taxpayer, and there had one William L. Bechtold, member of the firm, appraise the stocks, and after considering the question in conjunction with the taxpayer, the Hudson & Manhattan bonds were appraised at $46,873.42, with interest accumulated to the amount of $1,619.06; the Commonwealth Trust Company stock was appraised at $6,000.00; the First Preferred Hargadine-McKittrick Dry Goods Company stock was appraised at $500.00; the Second Preferred at $238.09; the Common stock at $375.27; and the New England Equitable Insurance Company stock at $168.00; or the sum total of $55,773.84. At this appraisement none of the Trustees of the Trust was present. The securities were left with G. H. Walker & Company, and upon instructions of the taxpayer they were offered for sale to the Trust, and the next day, or soon afterward, the secretary of the taxpayer was told by an official of the St. Louis Union Trust Company, one of the Trustees, that the Trust had no funds with which to purchase the Mallinckrodt securities above listed, and the secretary then made out a check in the sum of $55,773.84, payable to the Trustees of the Trust, dated December 24, 1920. This check was drawn on the First National Bank of St. Louis and signed by Edward Mallinckrodt, Sr. By check dated December 24, 1920, A. Hamilton, Assistant Trust Officer of the St. Louis Union Trust Company, paid G. H. Walker & Company $55,773.84 on the account of 'Edward Mallinckrodt Trust'. This check was endorsed to the First National Bank of St. Louis by G. H. Walker & Company and marked paid December 24, 1920, by the First National Bank. Immediately thereafter, G. H. Walker & Company remitted to Edward Mallinckrodt, Sr., the proceeds of the check received from the Trust, less commissions and tax to the amount of $335.32, or net proceeds of $55,438.52. The Trust at the time of this transaction was actively engaged in erecting the Arcade Building in St. Louis, and was in need of funds to carry on the enterprise. No effort was made to dispose of the said securities to any other party than the Trust. Edward Mallinckrodt, Jr., one of the Trustees, had nothing whatever to do with the transaction."

The trial court further found:

"That the transaction was not a bona fide sale and at arm's length, for that the fixing of the 'sale' price was not participated in by the purchaser. * * *

"That under the terms of the Trust Agreement the Trustor reserved the right to make written directions to the Trustees in respect to the management and preservation of the estate.

"That the Trustor did direct the Trustees to purchase the securities which he was offering for sale, and provided the funds with which to make the said purchase.

"That the net result of the transaction was that the Trustor after the alleged sale had the same funds, less the broker's commission, as before its consummation, and the Trust had the securities.

"That the transfer of the securities from Edward Mallinckrodt, Sr., to the Trust, regardless of the means used, was a gift of the securities to the Trust."

There are 43 assignments of error, of which 38 are said to be relied upon.

These assignments of error may largely be grouped under a few points as shown by the discussion in the briefs of counsel.

■ I. Was the suit properly brought in the name of the United States?

The suit was brought pursuant to section 283(j) of the Revenue Act of 1926,

44 Stat. 63, which contains the following language: "The Commissioner may, within one year from the time the decision is rendered, begin a proceeding in court for the collection of any part of the amount disallowed by the Board."

Appellant contends that this language requires the action to be brought in the name of the Commissioner. We think this contention cannot be sustained. The language quoted merely authorizes the Commissioner to start a proceeding in Court for the collection of the amount.

Section 919, Revised Statutes (28 U.S. C.A. § 732), is pertinent. It reads: "Sec. 919. All suits for the recovery of any duties, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by any act respecting imports or tonnage, or the registering and recording or enrolling and licensing of vessels, or the internal revenue, or direct taxes, and all suits arising under the postal laws, shall be brought in the name of the United States."

Sections 3213 and 3214, R.S. (26 U.S. C.A. §§ 1640, 1644, 1645(a, c), are instructive by analogy. The latter section reads in part as follows: "Sec. 3214. No suit for the recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Commissioner [of Internal Revenue] authorizes or sanctions the proceedings." (26 U.S.C.A. § 1640).

This latter section, we think, expresses the clear purpose of the second sentence of section 283(j).

Furthermore, the Commissioner was not the real party in interest; he was not, under said section, a collecting officer. He was simply a supervisory medium to determine the necessity of a suit. See United States v. Gordin (D.C.) 287 F. 565; Attorney General v. Rumford Chemical Works (C.C.) 32 F. 608, 623.

Section 283(j) did not change the general law requiring suits for the collection of taxes to be brought in the name of the United States. The section simply preserved the respective existing rights of the taxpayer and of the Government.

We hold that the suit was properly brought in the name of the United States.

■ II. Was the action begun within one year from the time the decision of the Board of Tax Appeals was rendered?

The taxpayer contends that the suit was barred by the one-year limitation mentioned in section 283(j) above quoted.

The question in dispute is: When was the decision of the Board of Tax Appeals rendered?

As stated above, the findings of fact were filed September 27, 1926. The order of redetermination was filed January 28, 1927. The present suit was begun January 27, 1928.

. The taxpayer's contention is that the decision was rendered September 27, 1926, the date when the findings were filed.

. The contention of the government is that the decision was rendered January 28, 1927, the date when the order of redetermination was filed.

We think the latter contention is correct.

Section 906(d) of the Revenue Act of 1924, as amended by Section 1000 of the Revenue Act of 1926 (26 U.S.C.A. § 617 [c] and note), which became effective February 26, 1926, provides that a decision of the Board of Tax Appeals "shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Board."

The order of redetermination in the case at bar specified the deficiency as nothing.

We think this statute is controlling.

■ III. Does the decision of the Board of Tax Appeals estop the government from maintaining the present suit?

When the Board of Tax Appeals was created by section 900 of the Revenue Act of 1924 (43 Stat. 336), no right of review of its decision was given by that section.

But by sections 274(b) and 279(b) of that act (43 Stat. 297, 300), the right to bring an independent action was given to the Commissioner and to the taxpayer following a decision of the Board of Tax Appeals.

The procedure is aptly described by the Circuit Court of Appeals of the First Circuit in Blair v. Curran, 24 F.(2d) 390, 392, in the following language: "The hearing before the Board was at that time little more than a preliminary skirmish, a run for luck. For either party, if dissatisfied with the decision, could bring a court action and try the matter de novo (Revenue Act 1924, §§ 274(b), 900(g), being 26 U.S.

C.A. [§ 1049 note], § 1218; Comp.St. § 6371-5/6b(g), the Board's findings of fact being prima facie evidence against the losing party. Section 900(g)."

The Board of Tax Appeals was reorganized by the Revenue Act of 1926 and its decisions made reviewable by the Circuit Court of Appeals (sections 1000–1002, 44 Stat. 105). Certain appeals from the Commissioner to the Board of Tax Appeals had been taken under the 1924 Revenue Act before the 1926 Revenue Act was passed. In some of these cases the matter had been tried by the Board of Tax Appeals when no right of review existed, but decided after a right of review by the Circuit Court of Appeals had been created. The case at bar fell into the latter class. It was to meet such a situation that section 283(j) was enacted by Congress.

The right to resort to the District Court by independent suit still existed, however. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; see Emery v. United States (D.C.) 27 F. (2d) 992; Old Colony R. Co. v. United States (D.C.) 27 F.(2d) 994.

Under the 1926 Revenue Act, the parties to such class of cases were entitled to a trial de novo in the District Court.

In Blair v. Curran, supra, 24 F.(2d) 390, 392, the court said: "A trial de novo is what Congress saved to the parties by section 283(j) of the Act of 1926, where a tax controversy had arisen under the Act of 1924, and a hearing before the Board, under the provisions of that act, had been held before the passage of the Act of 1926, and the decision of the Board was rendered after its passage."

We hold that the government was not estopped by the decision of the Board of Tax Appeals.

■ IV. Did the agreed statement of facts constituting the evidence before the Board of Tax Appeals preclude the introduction of further evidence before the trial court?

The Statutes (Revenue Act of 1924, §§ 274(b) and 279(b), as construed, provide for a trial de novo in the District Court. A further statute (Revenue Act of 1924, § 900(g), 43 Stat. 337, Revenue Act of 1926, § 906(f), 44 Stat. 107, 26 U.S.C.A. § 617(f) and note), provides that the findings of the Board of Tax Appeals shall be prima facie evidence.

It would seem anomalous under such circumstances that the evidence before the Board of Tax Appeals (the stipulation of facts) should be accorded any higher value than the findings of the Board of Tax Appeals.

It must be borne in mind that the trial in the District Court was not a retrial nor a review; the proceedings before the Board of Tax Appeals were not judicial proceedings, but simply proceedings before an administrative body. The Board of Tax Appeals was not a court. Old Colony Trust Co. v. Commissioner, supra; Helvering v. Rankin, 295 U.S. 123, 55 S. Ct. 732, 79 L.Ed. 1343. See, also, Capital Traction Co. v. King, 44 App.D.C. 315.

We hold that the trial court was not precluded by the statement of facts used before the Board of Tax Appeals from receiving additional evidence.

■ V. Is the government estopped from maintaining the present suit by reason of the action of the Commissioner of Internal Revenue in making out a certificate of overassessment and paying a refund?

A careful reading of section 283(j) of the Revenue Act of 1924 will show that there was no election of remedies.

The other alternative is that the refund was erroneous, and this is the contention of the government.

It is further contended that an erroneous refund may be recovered back, and that there is no difference in principle between recovery of an erroneous refund and the present suit.

That an erroneous refund may be recovered back seems to be fairly well settled.

In Talcott v. United States (C.C.A.) 23 F.(2d) 897, 901, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011, a case, involving the recovery of a refund, the Court, after citing United States v. Nashville, etc., Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81, and Wisconsin Central R. Co. v. United States, 164 U.S. 190, 210, 17 S.Ct. 45, 41 L.Ed. 399, used the following language: "Among other cases in line with the foregoing are Grand Trunk Western Ry. Co. v. United States, 252 U.S. 112, 40 S.Ct. 309, 64 L.Ed. 484, and Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403. They establish the principle that it is immaterial whether payments which are thus sought to be recovered were made under mistake of law or mistake of fact, that the only question is whether they

were paid without legal authority or legal liability therefor, and that the repayment to a taxpayer of a sum paid for taxes is not a final determination of his right to receive the same, that the government · may recover ,as for money had and received all payments illegally paid by a public officer, and that the decisions of executive officers in making such payments are not judicial and are not binding on a court."

We are in accord with the language quoted from the opinion in the Talcott Case. See, also, Champ Spring Co. v. United States, 47 F.(2d) 1 (C.C.A.8); Lindley v. United States (C.C.A.) 59 F.(2d) 336; United States v. Tuthill Spring Co. (D.C.) 55 F.(2d) 415; United States v. Pusey (C.C.A.) 47 F.(2d) 22; United States v. Bartron (D.C.) 35 F.(2d) 765.

It may be noted in passing that the taxpayer has retained the erroneous refund and has thereby profited to the extent of $3,403.24. Even under the general rule, the payment of the refund would not estop the government from bringing the present suit. Dakota County v. Glidden, 113 U.S. 222, 224, 5 S.Ct. 428, 28 L.Ed. 981; Wisconsin Cent. R. Co. v. United States, 164 U.S. 190, 205, 17 S.Ct. 45, 41 L.Ed. 399.

We think there is no basis for an estoppel against the government based upon the refund.

■■ VI. Did the stock of the Hargadine-McKittrick Dry Goods Company (excepting the first preferred), and the stock of the New England Equitable Insurance Company become worthless prior to 1920?

We have above held that evidence additional to the statement or stipulation of facts used before the Board of Tax Appeals was properly received by the trial court. Such additional evidence on the part of the government strongly tended to show that the stock of the Hargadine-McKittrick Company (except the first preferred) became worthless prior to 1920; similar evidence tended strongly to show that the stock of the New England Equitable Insurance Company also became worthless prior to 1920.

The question was one of fact; and the trial court found against the taxpayer. We do not understand that appellant disputes the conclusion if the evidence which supports the finding was admissible.

If the stocks mentioned became worthless prior to 1920, deductions on their account from gross income for income tax purposes could have been made in the year when the stocks became worthless. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; United States v. Hardy (C.C.A.) 74 F.(2d) 841; Royal Packing Co. v. Commissioner (C.C.A.) 22 F.(2d) 536.

Deductions could not be made in 1920. De Loss v. Commissioner (C.C.A.) 28 F.(2d) 803.

The result of the foregoing is that deductions in the case at bar to the extent of $135,995.23 from income in the taxpayer's return for 1920 were wrongfully made.

■ VII. Did the transaction by which the trust company became the owner of the stocks involve a bona fide sale by the taxpayer?

The motive of the taxpayer in getting rid of the securities is not claimed to be illegal.

In Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355, the Supreme Court has said: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." See, also, Superior Oil Co. v. Mississippi, 280 U.S. 390, 50 S.Ct. 169, 74 L.Ed. 504; United States v. Isham, 17 Wall. 496, 21 L.Ed. 728; Commissioner v. Dyer (C.C.A.) 74 F.(2d) 685; Jones v. Helvering, 63 App.D.C. 204, 71 F.(2d) 214; Commissioner v. Hale (C.C.A.) 67 F.(2d) 561; Iowa Bridge Co. v. Commissioner (C.C.A.) 39 F.(2d) 777.

And the means taken by the taxpayer were not illegal; but the question is: Was there a real sale, or only a fictitious or pretended one? See Shoenberg v. Commissioner, 77 F.(2d) 446 (C.C.A.8); Slayton v. Commissioner (C.C.A.) 76 F.(2d) 497; Commissioner v. Dyer, supra; Wiggin v. Commissioner (C.C.A.) 46 F.(2d) 743, 745.

It is to be noted that in the transaction in the case at bar: (a) The prices were fixed by the taxpayer and his broker; (b) the offer of the securities was at the direction of the taxpayer made to the trust; it was made to no one else, so far as the record shows; (c) the exact sum of money for the so-called purchase was furnished by the taxpayer to the trust; (d) the same amount of money (less the commission of the broker) was returned

to the taxpayer in completing the transaction; (e) it is to be further noted that the trust had been formed by the taxpayer having as its beneficiaries the son of the taxpayer and the son's family; (f) one of the express duties of the trustees was to "carry out any written directions which the Trustor [taxpayer] may give them in respect to the management or preservation of the trust estate."

In view of the foregoing and other considerations, the trial court held the transaction not to be a bona fide sale, but in reality a gift from the taxpayer (the trustor) to the trust.

■ VIII. There are statements made in two of the findings of fact of the trial court which are not covered by the foregoing discussion.

These parts of two of the findings of fact are challenged as being without any substantial support. They are: (A) the last sentence in finding 5 reading: "Edward Mallinckrodt, Jr., one of the Trustees, had nothing whatever to do with the transaction"; and (B) the first part of finding 9 reading: "That the Trustor did direct the Trustees to purchase the securities which he was offering for sale. * * *"

These statements were objected to and called to the attention of the trial court before the findings were filed upon which the judgment appealed from was based.

We have carefully examined the record for substantial evidence in support of these statements, but have failed to find such.

As to the first one, (A), it is barely possible that the word "transaction" refers merely to the conference with Bechtold instead of the alleged sale as a whole. If so, the statement is supported by the testimony and the challenge could not be sustained. We think, however, that the use of the word "transaction" in the other findings where the meaning is clear precludes such limited meaning in the finding in question.

As to the second one, (B), we think it is equally without support of substantial evidence. True it is that under the terms of the trust agreement, the trustor reserved the right to make *written* directions to the trustees in regard to the management and preservation of the estate; but it is not claimed that this right was exercised in the prescribed manner in regard to the alleged sale. No substantial evidence, so far as we have been able to discover from the record, discloses any oral directions to the trustees in regard to the sale.

The question arises, however, whether these two challenged findings, or either of them, are of material importance.

Whether the alleged sale was bona fide or merely colorable was one of the vital questions in the case.

It is the contention of the government that the taxpayer (the trustor) completely dominated the sale transaction. We think the participation or nonparticipation in the matter by Edward Mallinckrodt, Jr., one of the trustees, was a material matter to be considered.

We assume that the burden of proof was upon the taxpayer to prove that the deductions claimed by him were legal and proper, but we think he has sustained that burden by introducing at the trial the findings of the Board of Tax Appeals on that matter which read as follows:

"Toward the close of 1920, the taxpayer wished to dispose of the following securities and to establish his loss upon them. He disposed of them through G. H. Walker & Co., an established brokerage house in St. Louis, viz.: [Here follows the list.] * * *

"G. H. Walker & Co., as brokers and for the account of the taxpayer, negotiated the sale of, and sold these securities to the trustees of the above trust at the following prices: [Here follows a table showing prices, etc.] * * *

"The prices at which these securities were disposed of to the trustees, were negotiated by said brokers with said trustees, who desired to acquire said securities at the prices thus negotiated and agreed upon.

"At the time the trustees of the trust negotiated this purchase and wished to conclude same, the trustees were short of funds, and as had been done frequently theretofore when the trustees needed or desired money for transactions that they wished to enter into, they informed the grantor of their need of cash, and the grantor voluntarily made an additional donation to the trust estate of the amount of cash then needed by the trustees. This donation of cash was made to the trustees as an additional donation to the corpus of the trust estate held by them.

"The trustees thereupon concluded their proposed acquisition of said securities from said brokers and paid cash for them out of the trust estate."

The statute (Revenue Act of 1926, § 283[j]) makes such findings prima facie evidence. To overcome the effect of such findings, evidence was required on the part of the government. Such evidence we do not find in the record; but we do find findings by the trial court which, though unsupported by any substantial evidence, overrule in effect the findings of the Board of Tax Appeals.

Such findings by the trial court we think are not allowable, especially in view of the provisions of the statute making the findings of the Board of Tax Appeals prima facie evidence.

The finding by the trial court of non-participation in the sale transaction by Edward Mallinckrodt, Jr., seems to have been relied upon in the third conclusion of law which reads: "The transfer of the securities in question by the taxpayer to the Trust *under the conditions obtaining* was not a bona fide sale at arm's length. * * *" (Italics supplied.)

As to the other finding of fact which is challenged, (B), the result seems even more clear.

On the question whether the alleged sale was real or merely colorable, the fact whether there was an independent buyer or merely a puppet would seem material beyond any controversy.

The fact that the trustor (the taxpayer) might exercise influence over the trustees in a prescribed way could not, in our opinion, properly be the sole basis of a finding that he dictated their action in a different way.

Further, conclusion of law No. 4 would seem to be based upon this finding of fact. The conclusion reads as follows: "The taxpayer was the seller, and by reason of his reserved authority to direct the action of the trustees, also indirectly the buyer of the securities, and, consequently, the transaction disclosed did not constitute a valid sale."

If finding of fact No. 9 is eliminated, then conclusion of law No. 4 is left without a sufficient basis of fact. At least we cannot say that the trial court must have reached the same conclusion if the two challenged statements of fact were eliminated; and, of course, we cannot substitute our judgment for that of the trial court.

Our conclusion, therefore, is that these two challenged findings of the trial court were material to the main issue in the case; that they are not supported by any substantial evidence; and that the judgment must for that reason be set aside and a new trial granted.

It is so ordered.

STONE, Circuit Judge, dissents.