## DU PONT v. DEPUTY, Collector of Internal Revenue.

District Court, D. Delaware.
Jan. 18, 1938.

Hugh M. Morris, of Wilmington, Del., and James S. Y. Ivins (of Ivins, Phillips, Graves & Barker), of Washington, D. C., for plaintiff.

Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., and Percy W. Phillips (of Ivins, Phillips, Graves & Barker), of Washington, D. C., for Wilmington Trust Company, intervener.

John J. Morris, Jr., U. S. Atty., of Wilmington, Del., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., for defendant.

NIELDS, District Judge.

Indebitatus assumpsit to recover $161,017.30 alleged to have been wrongfully collected by defendant from plaintiff as income taxes for the year 1932 and interest.

The declaration alleges that on December 9, 1929, plaintiff purchased 21,730 shares of the common stock of Rubber Securities Company for $2,173,000; on December 30, 1932, plaintiff sold 16,000 shares of said stock for $234,360 and thereby sustained a

capital loss of $1,365,640; that plaintiff filed a return of income for 1932 and by February, 1935, had paid as taxes on such income $129,538.52; in September, 1935, the Commissioner of Internal Revenue assessed against plaintiff an additional tax of $140,-304.18 on account of income for 1932 together with interest thereon of $20,713.12 and thereupon plaintiff paid to defendant said additional amounts under protest; October 14, 1935, plaintiff filed a claim for refund of said additional amounts because the Commissioner refused to allow as a deduction in computing income tax liability for 1932 said capital loss upon the sale of said shares of common stock; November 9, 1935, the Commissioner disallowed said claim for refund of which plaintiff received notice.

To the above declaration defendant filed a special plea alleging that the sale of 16,-000 shares of Rubber Securities Company stock on which plaintiff claimed a capital loss of $1,305,640 was not a sale but was a gift; that said stock was transferred pursuant to the alleged sale from plaintiff to a trustee of two trusts theretofore created by plaintiff for the benefit of his children and that the funds with which the alleged purchase of said stock was made by the trustee was donated to the trustee by plaintiff at or about the time of the alleged sale of said stock. With this plea plaintiff joined issue.

The parties expressly waived a jury trial and agreed to submit the cause to the court. At the same time, the parties filed a stipulation and agreement that certain facts therein recited should be taken as true for the purposes of the case. Substantially the facts so stipulated are the following:

Plaintiff is a resident of Wilmington, Del. Defendant is, and since September 1, 1933, has been, the United States collector of internal revenue for the District of Delaware. March 15, 1933, plaintiff filed his federal income tax return for the calendar year 1932 with the collector of internal revenue at Wilmington, Del. On this return he claimed a deduction for capital loss on the sale of 16,000 shares of the common stock of Rubber Securities Company amounting to $1,365,640. June 16, 1933, plaintiff filed an amended return which differed from the original return so far as income and tax are concerned only in that it included an item of $49,770.56, representing income from fiduciaries, and the tax was increased thereon from $55,507.84 to $77,929.47. The tax reported on each of these returns was paid in due course and is not a part of the tax sought to be recovered here. February 4, 1935, plaintiff filed a waiver extending the period in which assessments could be made to September 15, 1935. Thereafter, the Commissioner determined a deficiency in tax of $51,609.04, plus deficiency interest of $5,597.11, which was paid on January 5, 1935. This deficiency was due to certain adjustments proposed in a revenue agent's report dated December 12, 1934. No part of the above assessments is sought to be recovered in this suit.

Subsequently, various conferences were had and thereafter a further revised deficiency of $140,304.18, plus deficiency interest of $20,713.12, was determined by the Commissioner and assessed August 31, 1935, pursuant to a qualified form of waiver of restriction on assessment and collection of deficiencies in tax executed by plaintiff. This amount was paid by plaintiff to defendant on September 13, 1935. It had been assessed by the Commissioner on account of the disallowance in part of the claimed loss on the sale of 16,000 shares of Rubber Securities Company stock which was determined by the Commissioner to partake of the nature of a gift and not of a sale. A claim for refund of the deficiency tax of $140,304.18, and interest of $20,713.-12, was filed by plaintiff with defendant on October 14, 1935. November 9, 1935, the Commissioner advised plaintiff that the claim for refund would be disallowed. December 26, 1935, it was formally rejected.

January 30, 1920, plaintiff transferred to Fidelity Trust Company certain securities and simultaneously Fidelity Trust Company executed a declaration of trust for the benefit of the daughters of plaintiff. This trust is hereinafter referred to as the First Trust. October 17, 1927, Fidelity Philadelphia Trust Company, formerly Fidelity Trust Company, plaintiff, and Wilmington Trust Company entered into an agreement substituting Wilmington Trust Company as trustee under the declaration of trust above mentioned. February 15, 1923, plaintiff and Wilmington Trust Company executed an agreement of trust for the benefit of plaintiff's son. This trust is hereinafter referred to as the Second Trust. December 29, 1932, Wilmington Trust Company, trustee under said trusts, had on hand, in addition to assets in the form of securities, cash balances as follows: In the First Trust, $5,992.53; in the Second Trust, $768.14.

December 29, 1932, plaintiff executed supplements to the First and Second Trusts

by which the corpus of the First Trust was increased by $210,000, and the corpus of the Second Trust was increased by $30,000. On the same day plaintiff transferred (a) to Wilmington Trust Company, as trustee under the terms of the First Trust, $210,000 in cash, and (b) to Wilmington Trust Company, as trustee under the terms of the Second Trust, $30,000 in cash.

On the following day plaintiff sold through Laird & Co., stock brokers, 16,000 shares of the common stock of Rubber Securities Company at $14.6475 per share, for $234,360. Of such shares Wilmington Trust Company as trustee of the First Trust bought 14,000 shares at $14.75 per share, for $206,500; and Wilmington Trust Company as trustee of the Second Trust bought 2,000 shares at $14.75 per share, for $29,500. The difference between the price received by plaintiff and the prices paid by the trustee represents transfer tax stamps at 4 cents per share on 16,000 shares—$640, and broker's commission at 6¼ cents per share on 16,000 shares—$1,000.

Annexed to the stipulation are copies of the First and Second Trusts. Both trusts are irrevocable and under no contingency can the corpus of either trust pass to plaintiff. The Second Trust contains a provision permitting plaintiff to add to the trust estate from time to time. The First Trust makes no such provision. Paragraph 6 of the First Trust provides that the trustee shall make or change the investment of the principal of the trust fund and make new investments of the corpus or principal of the trust estate only with the advice and consent of one or more advisory trustees named therein. It provides further that the trustee may change or make any investments with the written consent of one of the advisory trustees, and must make such change or investment upon the written request of both advisory trustees. By the terms of the Second Trust, plaintiff reserved the right to order and direct in writing the sale of any securities comprising the trust estate and the purchase of other securities to be held by the trust.

At the hearing plaintiff was the only witness. Defendant was content to rest its case upon the facts stipulated and upon plaintiff's testimony.

Plaintiff testified:

"Q. At the time, December 29, 1932, that you made gifts of $210,000 and $30,000 to the Wilmington Trust Company as trustee, will you tell the Court what your primary motive was? A. There is no question about my primary motive. It was to crystallize a loss, and of course it was a staggering loss. I got too high a price out, and the only way I could justify that was to put in the necessary cash so that there could not be any question later about my having robbed the trust. I was the creator of that trust and I knew it was bona fide. * * * The actual value of the securities was probably less than what I sold them for, but nobody could object, and the Government has not objected to the price sold, and it was a very ample price, and it was a staggering loss from what I paid for it. To make that loss available for income tax purposes, I would have to make an actual sale with no strings attached to it, and I had to part company with the securities forever.

"Q. No doubt, you divested yourself of all title to the stock? A. Yes, sir, that is what my endeavor was, and the object of putting it through Laird & Company and paying them a commission was so as to leave a definite record of the transaction outside of my office, and there could be no question about when it was done. * * *

"Q. Have you finished? A. I do not think I have any more to say. It was an open and shut proposition and I recommended it. If the Internal Revenue wish to consider this as a gift, and would consider this as a gift all the way through, I pointed out that it would be of benefit to the trust, and so great a benefit that I could afford to throw away $130,000 or $140,000 to get a benefit for my children.

"Q. In order to have the record show some facts that are not stipulated, but which I mentioned in opening, on December 29, 1932, it is stipulated that you did make these gifts of cash and that you received a letter from the trustee. Who made this suggestion or originated the suggestion for the purchase by the trustee of the Rubber Securities Company stock. A. There is no question that I suggested it, although I have not a definite recollection of how it was done. It might have been done through the broker, or direct with the Wilmington Trust Company, and I do not remember the details, but I know the thought originated with me, and there is no question about that.

"Q. And similarly how did the instruction from Mr. Lammot duPont to the trustee with respect to the other trust, originate? Did you suggest to him that he write that letter? A. I think I probably spoke to him at the time; if I had not, he

would have come in and asked me about it when he had the suggestion from the Trust Company, and there is no question, that Lammot would have conferred wth me.

"XQ. Mr. duPont, you stated on direct examination that you desired to crystallize a loss. You mean by that this entire transaction, when you had started in to give the money to the trusts, it was your intention to carry out the sale as it was carried out by the transfer of the securities to the trust? A. I think so.

"XQ. It was all one conceived plan. Your idea was to take an income tax loss? A. Yes, sir.

"XQ. There is no question about that? A. No question at all.

"XQ. And it was conceived in your mind and carried out completely by you? A. Yes. I tried to carry it out in accordance with the law and the rules of the Internal Revenue Department which I thought gave me exactly that right to do that thing.

"XQ. You did what you thought was in accordance with the law? A. Yes.

"XQ. You still direct and suggest investments to these two trusts? A. I still what?

"XQ. Direct and suggest all investments made by these two trusts which you have created for your children, do you not? A. I am not sure about the girls' trust, I do not recall having any recently, but I probably would be consulted by the trustee.

"XQ. You have been in the past? A. certainly, about Irenee's trust they have always consulted with me, and they said how much money they have to invest, and what shall we invest it in.

"XQ. Any purchases or investments which might be made by these trusts would be either with your consent or at your suggestion? A. I think so. I would like to ask Mr. Evans that because he knows what is in the trust, and he is the trust officer. * * *

"XQ. You do not know of any that were not, when you were not consulted? A. I did not examine the books of the trust. I do not know what has happened. I ought to know, but you can ask Mr. Evans that. I have been consulted many times."

### The Issue.

There is no issue of fact in the case. The sole question is one of law. Did plaintiff sell 16,000 shares of Rubber Securities Company stock to the trustee of the two trusts for his children and thereby incur a capital loss which should be allowed as a deduction from gross income in computing net income for the taxable year 1932? Or did plaintiff make a gift of the 16,000 shares to the trusts?

The statutes of the United States authorizing capital losses allowed as deductions are:

Revenue Act of 1932, c. 209, 47 Stat. 169.

"§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

"Sec. 101. *Capital net gains and losses.* * * *

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) Definitions. For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

"(3) 'Capital deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year." 26 U.S.C.A. §§ 23 (e) (1, 2) and note, 101 note.

The decisive question is whether or not what has been done is "the thing which the statute intended." Here there is no actual business loss. The whole transaction was a series of steps on sand. Stripped of the form the transaction resulted in a gift of stock to the two trusts.

"To what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed. * * * Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S. Ct. 788, 790, 78 L.Ed. 1348.

The attitude of the court towards cases of this kind is influenced by certain general considerations. It is argued that in income tax cases the form and not the substance of the transaction should be upheld. On the contrary, for the purpose of determining tax liability the courts look through the form of the transaction to the substance. S. A. MacQueen Co. v. Commissioner, 3 Cir., 67 F.2d 857. Courts apply the maxim "Equity looks to the substance rather than to the form." The maxim serves to define the problem and directs the inquiry into the realities. Plaintiff frankly stated that his primary purpose was to crystallize what he considered a loss and to take an income tax deduction therefor. Such a transaction is carefully scrutinized. If the court finds the transaction is not what it appears to be it will be disregarded. The courts hold that a single transaction may not be broken up into various elements to avoid a tax. The various steps do not change the character of the transaction. " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L.Ed. 750, 45 A.L.R. 1370.

The plan to realize a capital loss was conceived, directed, and controlled by plaintiff. The plan involved seven steps, all parts of a single transaction and was fully executed within two days. At the suggestion of plaintiff supplements to the trust declarations were prepared increasing the corpus of the First Trust by $210,000 and the corpus of the Second Trust by $30,000, as will appear by reference to copies of the supplements in footnotes 1 and 2. December 29, 1932, both supplements were formally ex-

---

1 "Whereas Irenee Du Pont, of Christiana Hundred, New Castle County, State of Delaware, has this day paid unto Wilmington Trust Company, a Delaware corporation, Two Hundred and Ten Thousand Dollars ($210,000.00) in cash, which cash is to be added to the corpus or principal of a certain trust fund created by a certain Declaration of Trust executed by Fidelity Trust Company, a Pennsylvania corporation, on January 30, 1920 and approved by said Irenee duPont, of which trust said Wilmington Trust Company was substituted as Trustee by a certain agreement dated October 17, 1927, between Fidelity-Philadelphia Trust Company, a Pennsylvania corporation, successors to said Fidelity Trust Company, said Irenee duPont and said Wilmington Trust Company:

"Now, therefore, in consideration of the premises, as well as for and in consideration of the sum of One Dollar by said Wilmington Trust Company to said Irenee duPont this day paid, the receipt whereof is hereby acknowledged, it is agreed that said cash was paid to said Wilmington Trust Company in trust, to be added to the aforesaid trust as a part of the corpus or principal thereof and subject to all of the uses, purposes, trusts, terms and conditions set forth in said Declaration of Trust of January 30, 1920 and said agreement of October 17, 1927.

"In witness whereof, said Wilmington Trust Company has caused the hand of its Vice-President and its corporate seal to be hereunto affixed this twenty-ninth day of December, 1932.

"Wilmington Trust Company
"By: Elwyn Evans
"Vice-President
"Attest: J. Sellers Bancroft
"Assistant Secretary

"I, Irenee duPont, do hereby approve of the provisions contained in the foregoing instrument of writing or Declaration of Trust.

"Irenee duPont
"Witness: Warren Mendenhall
"December 29, 1932.

2 "This supplemental trust agreement, made this 29th day of December 1932, between Irenee Du Pont, of Christiana Hund., New Castle Co., Delaware, party of the first part, hereinafter called 'Trustor', and Wilmington Trust Company, a Delaware corporation, party of the second part, hereinafter called 'Trustee', Witnesseth:

ecuted by plaintiff and the trustee. On the same day plaintiff transferred $210,000 in cash to the trustee under the terms of the First Trust and $30,000 in cash to the trustee under the terms of the Second Trust. At the suggestion of plaintiff and on the same day one of the advisory trustees under the First Trust wrote a letter to the trustee authorizing the purchase by the trustee of 14,000 shares of Rubber Securities Company common stock as will appear by reference to a copy of said letter in footnote 3. At the suggestion of plaintiff and on the same day a vice president of the trustee addressed a letter to plaintiff asking authority to purchase 2,000 shares of Rubber Securities Company common stock on behalf of the Second Trust as will appear by reference to a copy of the letter in footnote 4. On the same day plaintiff indorsed his approval on a copy of said letter and returned the same to the trustee. On the following day, December 30, 1932, plaintiff transferred to the trustee through stock-

"Whereas, heretofore on the 15th day of February, 1923, Trustor and Trustee entered into an agreement creating a trust of certain property therein described; and

"Whereas, in paragraph 'Third' of said agreement Trustor reserved the right to add other property to the trust fund; and

"Whereas, Trustor now desires to exercise said right and add to the trust fund the property hereinafter described;

"Now, therefore, in consideration of the premises and Trustee's agreement to undertake the duties of Trustee with respect to such additional property hereinafter provided Trustor has assigned, transferred, conveyed and delivered, and by these presents does assign, transfer, convey and deliver, unto Trustee and its successors all of his right, title and interest in and to the following described property, that is to say:

"Thirty thousand dollars ($30,000.00) in cash.

"In trust, nevertheless, for the uses and purposes set forth in said original agreement and all amendments thereto, if any, between Trustor and Trustee dated February 15, 1923, subject to all the terms and conditions thereof as fully and for all purposes as if said property had previously been described and included in said original agreement and said amendments, if any, at the time of making and execution thereof.

"In witness whereof, Irenee DuPont, Trustor, has hereunto set his Hand and Seal, and Wilmington Trust Company, Trustee, in token of its acceptance of said trust, has caused this supplemental agreement to be signed in its name by one of its Vice-Presidents and its corporate seal to be hereunto affixed by one of its assistant Secretaries, all done in duplicate on the day and year first above written.

"[Signed] Irenee du Pont [Seal]
 "Wilmington Trust Company
  "By: Elwyn Evans
   "Vice-President

"Witness:
 "Warren Mendenhall
  "Attest: J. Sellers Bancroft
   "Assistant Secretary
   "December 29, 1932.
3 "Wilmington Trust Company
"Wilmington, Del.
"Gentlemen:
"This is to signify my approval of the purchase of 14,000 shares Rubber Securities Company common stock, as an investment of available funds in the trust of which you are Trustee (formerly Fidelity Trust Company, Trustee) for the seven daughters of Irenee duPont.
 "Yours very truly,
  "[Signed] Lammot duPont
 "Wilmington Trust Company
 "Wilmington, Del.
 "December 29, 1932
4 "Mr. Irenee duPont
"Du Pont Building
"Wilmington, Delaware.
"Dear Sir:
"You have today added to the trusts created by agreement with you dated February 15, 1923, for Irenee duPont, Jr. (our Trust No. 644) $30,000.00 in cash.
"We suggest that this money be invested in Rubber Securities Company common stock. With funds on hand we can buy approximately two thousand (2,000) shares.
"Under the terms of the trust agreement you as trustor have the right to order and direct us to purchase securities.
"If this suggestion meets with your approval, will you kindly give us such a direction by signing the enclosed copy of this letter and returning it to us.
 "Yours very truly,
  "[Signed] Elwyn Evans
   "Vice-President
"I hereby approve of the foregoing suggestion and direct you to purchase two thousand (2,000) shares of Rubber Securities Common Stock for the aforesaid trust under agreement with me dated February 15, 1923.
   "[Signed] Irenee duPont
"Dec. 29, 1932."

brokers 16,000 shares of Rubber Securities Company common stock for $234,360 "to leave a definite record of the transaction outside of my office." Of the 16,000 shares transferred by plaintiff, the trustee of the First Trust acquired 14,000 shares for $206,500 and as trustee of the Second Trust acquired 2,000 shares for $29,500. The difference between the sum received by plaintiff and the sum paid by the trustee represents transfer tax stamps of $640 and a broker's commission of $1,000. The net result of the transaction was that plaintiff received back the original $240,000 less ,the broker's commission, stamps, and $4,000. The two trusts for his children acquired the stock.

The payment by the plaintiff of the $210,000 and the $30,000 to the trustee under the two declarations of trust was not a gift of cash to the two trusts. It was a fund of $240,000 impressed with an express trust to apply the same in the purchase from Laird & Co. of 16,000 shares of plaintiff's Rubber Securities Company stock. The trustee was not free to invest the fund under the general terms of the trust declarations. Had it done so it would have been liable for breach of trust. The funds were gifts with a string to them and the string was held by plaintiff. This is the plain import of plaintiff's testimony and there is no controversy whatever about it. Moreover, there is another vital deduction from the above-stated facts. If the trustee was bound to purchase the stock from plaintiff and to pay him back the money received there was no sale of stock. A sale imports a delivery of goods for a consideration passing from the buyer. Here, the buyer was a trustee delivering back cash in execution of a trust. It was not a trustee investing funds of two trust declarations in the purchase of stock. Plaintiff received back his cash with minor deductions, as he planned. At all times the funds belonged to plaintiff. He cannot deal with himself and call the transaction a sale. Plaintiff was divested of his stock but that result follows as effectively from a gift of stock as from a sale of stock. In view of the proof in the case, plaintiff's testimony that he intended a sale is of no legal effect.

The reports furnish no case where the facts are exactly like the facts in the instant case. Much of the reasoning of the courts in the following cases is applicable: Commissioner v. Riggs, 3 Cir., 78 F.2d 1004; Tex-Penn Oil Co. v. Commissioner, 3 Cir., 83 F.2d 518; Johnson v. Commissioner, 2 Cir., 86 F.2d 710; Commissioner v. Dyer, 2 Cir., 74 F.2d 685; St. Louis Union Trust Co. v. United States, 8 Cir., 82 F.2d 61.

It is unnecessary to repeat as findings what the court has already stated in this opinion. However, the court makes the following findings of fact:

1. The net result of the transaction was that the plaintiff, after the alleged sale, had the same funds less the broker's commission, and stamps, and except $4,000. The trusts had the stock.

2. Plaintiff directed the trustee to acquire the stock and provide the funds necessary therefor.

3. The transfer of the stock from plaintiff to the two trusts, regardless of the means used, was not a sale of stock but was a gift of stock.

## Conclusions of Law.

1. Plaintiff is not entitled to deduct from his gross income for the year 1932 the sum of $1,365,640 alleged loss on the purported sale of 16,000 shares of Rubber Securities Company stock on December 30, 1932, for the purpose of computing his taxable net income.

2. The transfer of said stock by plaintiff to said trusts was not a sale contemplated by the statutes of the United States and is not a transaction enabling plaintiff to deduct a loss in his return of income for 1932.

### .Intervention.

March 30, 1937, Wilmington Trust Company, trustee in the First and Second Trusts, petitioned for leave to intervene as parties plaintiff "so that in this proceeding the determination of the said issue may be binding and conclusive for all time, upon all persons concerned with said issue and who are or who may be at any time affected thereby, directly or indirectly," etc.

On the same day, counsel for defendant being present and not objecting, the court granted petitioner leave to intervene and ordered that "the issues between the plaintiff and the defendant as framed by the pleadings heretofore filed shall be deemed to constitute also the issues between the Intervenors and the defendant."

December 17, 1937, at the opening of the trial of this case, defendant moved to vacate the order and dismiss the intervening petition. In view of the lapse of time and the admission that no injury can be occasioned thereby, Wilmington Trust Com-

40

pany, as trustee, should be permitted to remain a party to the record. In the exercise of a sound discretion defendant's motion must be denied.

Defendant is entitled to judgment with costs against plaintiff.

Exceptions, if any, may be filed within ten days from the date hereof.