**POLAROID CORPORATION and The Greist Manufacturing Company, Intervener,**

v.

**UNITED STATES of America.**

**Civ. A. No. 55–144.**

United States District Court
D. Massachusetts.

Feb. 28, 1956.

———◆———

Isaac M. Barnett, Silver, Saperstein & Barnett, New York City, for plaintiff.

Anthony Julian, U. S. Atty., Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., Benjamin H. Pester, U. S. Dept. of Justice, Washington, D. C., for defendant.

**736**

ALDRICH, District Judge.

■ This is an action brought under 28 U.S.C. §§ 1340 and 1346 to recover a "manufacturer's tax" paid by Polaroid Corporation, a Delaware corporation having its principal place of business in the tax district of Massachusetts, assessed upon a camera pursuant to the Revenue Act of 1941. 26 U.S.C. § 3406 (a) (4), 55 Stat. 716 as amended.[1] One camera, only, is involved, this being a test case to determine whether Polaroid or Greist Manufacturing Company, a Connecticut corporation having its principal place of business in the tax district of Connecticut, is the manufacturer who first "sold" it. The ultimate purchaser of this particular camera has consented to the suit. With the assent of Polaroid and the government[2] I permitted Greist to intervene. Du Pont v. Deputy, D.C. D.Del., 23 F.Supp. 33. The order allowing the intervention provided that the only issue to be determined was the party considered to be the manufacturer, and not the amount or base of the tax. With respect to Polaroid the amount is not in dispute. With respect to Greist it is not here in issue.[3]

■ Polaroid is the owner of valuable product patents upon a camera known as the Polaroid Land Highlander, hereinafter called the camera. This is a popular article, and sells at a rate of over 10,000 a month. Plaintiff is the sole merchandiser. It has no facilities, plant or personnel, for manufacturing in any such quantities, and, accordingly, negotiated a contract with Greist, after soliciting bids from it and others. Greist is a large manufacturer of mechanical "precision assemblies," principally for sewing machines. Under the Polaroid contract it manufactures about one half of the parts, subcontracts or purchases the rest, assembles the complete unit, and even packages it for delivery to Polaroid, at an agreed rate per camera.[4] Polaroid supplies nothing except literature to go in the box. The government contends, however, that Polaroid and not Greist is the manufacturer.

The evidence was undisputed. I find that the contract was negotiated at arm's length; that Polaroid and Greist are separate entities, and have no financial or other connections, and no relationships other than what arise from the contract itself. Polaroid does not direct or supervise Greist's operations, or participate in them. Other than specifying the maker of the lens Polaroid has no interest in the source of any of the over 200 component parts to each camera, or, provided the finished product complies with the specifications, in the methods by which they are produced. Greist may proceed as it pleases and make such profit (or loss) as it may. There is, however, one

1. "There shall be imposed on the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the rate, on the price for which sold, set forth in the following paragraphs (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof): * * *

"(4) Photographic apparatus. Cameras * * * 10 per centum * * *."
The present statute, as embodied in the Internal Revenue Code of 1954, is not significantly different. 26 U.S.C. § 4171, c. 736, 68A Stat. 489.

2. Prior to consenting government counsel raised the question of whether this would be declaratory relief so far as Greist was concerned, expressly forbidden in tax matters. 28 U.S.C. § 2201. I believe the purpose of that statute is to avoid suits merely for declaratory relief, particularly at the expense of the government's receiving prompt payment of the tax, and is no bar to the joinder of a party in a proper action to recover a tax to permit a common question between it and the others to be settled in one proceeding.

3. In opening plaintiff's counsel stated that the tax base, if Greist was the manufacturer, would be Greist's cash price to Polaroid. I do not decide this question, but shall comment upon it in the course of this opinion.

4. In addition to this, Polaroid furnished Greist certain special tools suitable only for production of the camera. These tools were designed by Greist, but paid for by Polaroid. All other tools, usable for standard procedures, are Greist's.

exception to this. The contract contains an escalator clause, which provides that if there are increases or decreases, amounting to more than ten cents a camera, in Greist's factory wages, or in the cost of parts, material or supplies, such differential will be passed on to Polaroid. The government does not refer to this in its brief, but it seems to me of some importance bearing on the relationship of the parties.

The government's contention is based upon the following circumstances. Polaroid's and not Greist's name is the only one appearing on the camera, the package, and the literature; the product must conform to Polaroid's specifications; Greist's output is limited to orders placed by Polaroid; it can sell to no one but Polaroid. The government classifies these matters, taken into consideration with the ownership of the patents, as constituting control, and says that control of the product means that Polaroid is the manufacturer.

Manufacturing has been defined as follows:

"To make (wares or other products) by hand, by machinery, or by other agency * * * to produce by labor, esp., now, according to an organized plan and with division of labor, and usually with machinery. * * *" Webster, New Internat. Dict. (2d Ed.).

See also, Commissioner of corporations and Taxation v. Assessors of Boston, 321 Mass. 90, 94, 71 N.E.2d 874.

I do not think it can be said that such a definition can not encompass the plaintiff. True, some of the government's arguments are unimpressive. The fact that the goods do not bear the manufacturer's name is a common occurrence in all branches of trade. A grocery store is not a farmer because it sells canned vegetables under its trade name; nor is a mail order house a manufacturer. Also, it can hardly be thought that the fact a vendee insists on ordered goods meeting its specifications makes it the producer. Nor, standing alone, does an agreement to sell one's entire output to a particular buyer mean that the buyer is the manufacturer.

However, the government's position is stronger than this. Polaroid not only agrees to buy Greist's entire output, but it dictates the amount of that output. If Polaroid's orders do not use up Greist's capacity, Greist is not free to sell elsewhere. If various costs go up, the risk is Polaroid's. If Greist manages to cut them, the gain is Polaroid's. The specialized tools are Polaroid's. The product patents, without which Greist could not operate,[5] are retained by Polaroid, except for an implied license, for Polaroid's own benefit. Polaroid may terminate without cause, and Greist can never make another camera. In many important ways, therefore, Polaroid retains the dominant hand.

The patents seem to me of particular significance. If Greist were the ordinary uncontrolled manufacturer it would have to pay royalties to Polaroid, which, in turn, would be reflected in the sales price upon which the tax would be computed. Plaintiff's counsel made it plain in his opening that it was his contention, and would be Greist's, for whose tax, if any, the contract made Polaroid responsible, that the tax should be Greist's on the basis of Greist's cash price to Polaroid. This disregards the fact that Polaroid was supplying a necessary and valuable component of any sale, a license under the patents.[6] This absence of royalties is an abnormal situation. I think

---

5. Except for "curiosity or mere amusement." 3 Walker, Patents (Del.Ed.) 1682.

6. It is noteworthy that the contract expressly stated that Polaroid granted Greist "an implied license." I believe this as much of the package as if Polaroid had furnished part of the basic materials. Cf. Carbon Steel Co. v. Lewellyn, 251 U.S. 501, 40 S.Ct. 283, 64 L.Ed. 375; Clawson & Bals v. United States, 7 Cir., 182 F.2d 402, certiorari denied 340 U.S. 883, 71 S.Ct. 197, 95 L. Ed. 641.

Polaroid is trying to eat its cake and have it.

Of course it might simply follow from this that Greist is the manufacturer and that Polaroid's contention as to the tax base, or true sales price, is erroneous. But I do not think it always so that the one who does the physical labor is the manufacturer. Obviously there is bound to be a difficult border line as to when, in the concept of this act, one is a manufacturer or only a buyer. The case at bar may be close. It is my opinion, however, that the balance favors the government. Charles Peckat Mfg. Co. v. Jarecki, 7 Cir., 196 F.2d 849, certiorari denied 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678; Hendy v. Soule, C.C.D. Cal., 11 Fed.Cas. page 1097, No. 6,359; cf. Carbon Steel Co. v. Lewellyn, supra, note 6.

The complaint is dismissed.