The Honorable Tim Shallenburger State Representative, 1st District 2027 Fairview Baxter Springs, Kansas 66713
Dear Representative Shallenburger:
You request our opinion regarding the application of the Kansas trading stamp act to a particular promotion that is being considered for nation-wide participation. You state that the promotion involves exchanging the universal product codes (UPCs) from certain of the entity's products for one of a number of promotional products that may be selected by the participant. The promotional products include wearing apparel, sleeping bags, tote bags, lighters, etc. all bearing the promoter's logo, trademark or tradename. While the promoter will not directly manufacture the promotional products, it will have extensive control over the manufacture of the products pursuant to a contract entered for that purpose, including setting explicit specifications, requiring that the logo or trademark of the promoter be affixed to each product, limiting distribution of the products to the promoter or customers of the promoter who participate in the promotion, and dictating the amount of manufacturing output.
The Kansas trading stamp act, K.S.A. 21-2801 et seq., generally prohibits the redemption of stamps, coupons or similar devices, distributed in connection with the sale of goods, for cash, merchandise or anything of value. K.S.A. 21-2801; 21-2802. However, there are exceptions to the prohibition. For purposes of your request, the pertinent exception states:
 "This act shall not apply to any coupon, ticket, certificate, card or other similar device which is issued, distributed, furnished or redeemed:
 (a) By a manufacturer or packer, when such coupon, ticket, certificate, card or other similar device is redeemable:
 (1) Without or with accompanying cash, for any product of the manufacturer or packer or for one specified and particular product not manufactured or packed by the manufacturer or packer; or
 (2) by the manufacturer or packer in cash." K.S.A. 1993 Supp. 21-2803.
This exception does allow redemption of coupons for products not manufactured by the manufacturer, but only if each coupon is redeemable for only one specific product. State ex rel. Stephan v. Pepsi-ColaGeneral Bottlers, Inc., 232 Kan. 843 (1983). In the situation you present, each UPC will be redeemable for any one of a variety of items and the choice will be that of the consumer. Thus the exemption discussed in the Pepsi-Cola case is not applicable. We must therefore determine whether the promoter would be considered the manufacturer of the promotional products for purposes of the trading stamp act.
The term "manufacturer" is not defined in the trading stamp act. While the term is defined elsewhere in the Kansas statutes, the definitions are not consistent, some including the designer or others engaged indirectly in the manufacture of the product [K.S.A. 8-601, K.S.A. 1993 Supp.60-3302(b)], others arguably requiring direct involvement in the manufacturing process [K.S.A. 8-1434, K.S.A. 1993 Supp. 8-2401(k) and (l), K.S.A. 41-102(m) and (n), 75-1212(c), K.S.A. 1993 Supp. 79-201m(a)(1), K.S.A. 79-3370 and 79-3402(j)]. Likewise there is case law supporting each definition.
Because the trading stamp act is penal in nature, it must be strictly construed against the state and in favor of those who may come within it provisions. Pepsi-Cola, supra at 846, 847. For this reason, and because the term manufacturer has not been defined in the act, we believe the broad definitions of manufacturer must be applied, thereby exempting the proposed promotion from the provisions of the trading stamp act. The broad definition is best reflected by K.S.A. 1993 Supp. 60-3302(b) (including one who designs the product or holds himself out as the manufacturer) and cases such as Polaroid Corporation v. United States,138 F. Supp. 735 (D.Mass. 1956), aff'd 235 F.2d 276 (1st Cir. 1956), aff'd 235:
 "The fact that the goods do not bear the manufacturer's name is a common occurrence in all branches of trade. A grocery store is not a farmer because it sells canned vegetables under its trade name; nor is a mail order house a manufacturer. Also, it can hardly be thought that the fact a vendee insists on ordered goods meeting its specifications makes it the producer. Nor, standing alone, does an agreement to sell one's entire output to a particular buyer mean that the buyer is the manufacturer.
 "However, the government's position is stronger than this. Polaroid not only agrees to buy Greist's entire output, but it dictates the amount of that output. If Polaroid's orders do not use up Greist's capacity, Greist is not free to sell elsewhere. If various costs go up, the risk is Polaroid's. If Greist manages to cut them, the gain is Polaroid's. The specialized tools are Polaroid's. The product patents, without which Greist could not operate, are retained by Polaroid, except for an implied license, for Polaroid's own benefit. Polaroid may terminate without cause, and Greist can never make another camera. In many important ways, therefore, Polaroid retains the dominant hand." Id. at 737. See also International Armament Corp. v. United States, 598 F. Supp. 1028, 1032 (E.D.Va. 1984); Record Guild of America, Inc. v. United States, 172 F. Supp. 676, 679 (1959).
We do not suggest that all the above-listed elements are necessary to a determination that a particular entity is a manufacturer, but the more elements that are present, the clearer it becomes that the entity is the one in control and should be considered the manufacturer for purposes of the trading stamp act. Thus, whether a particular entity is a manufacturer for purposes of the act will be determined on a case-by-case basis taking into consideration of all the circumstances surrounding the manufacture of the products involved.
In conclusion, an entity that retains extensive control over another's manufacture of a product exclusively for that entity is considered a manufacturer for purposes of the trading stamp act. Evidence of the control necessary includes: requiring that the product be manufactured according to the entity's explicit specifications; requiring the entity's logo or trademark be affixed to each product manufactured; prohibiting distribution of the product to anyone other than at the direction of the entity for which it is made; and dictating the level of production.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM: