## OSSORIO v. UNITED STATES.

### No. 43370.

Court of Claims.

April 26, 1937.

962

Thos. Witter Chrystie, of New York City (T. Ludlow Chrystie and Chrystie & Chrystie, all of New York City, on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Since 1931 plaintiff has been a resident, and since 1933 a citizen, of the United States. In 1927 he and his wife, both then citizens and residents of the Philippine Islands, separated. In order to conform to the community property laws of the Philippine Islands, plaintiff and his wife entered into an agreement with reference to their community property. Among other property, they owned 1,450 shares of stock of the North Negros Sugar Company, Inc., and it was agreed that each should have 725 shares of this stock; however, only 100 shares were transferred to the wife and she sold her remaining 625 shares to plaintiff, who agreed to pay her 1,875,000 pesos or an agreed price of 3,000 pesos each with in-

terest at 8 per cent. per annum on the unpaid balance. In order to secure this payment to the wife, plaintiff placed 900 shares of stock. in the same corporation in the Bank of the Philippine Islands under an agreement whereby any dividends earned and paid on these 900 shares should be credited by the bank to the wife's account. The amounts so credited from time to time were to constitute and be treated as payments by plaintiff on his obligation to his wife under the community property settlement agreement.

During 1931 and up to May, 1932, all dividends earned and paid on the aforementioned 900 shares of stock and the accretions thereto were reported by him as his income with appropriate deductions for interest paid.

On May 31, 1932, when the Ossorio Securities Corporation, a holding company, was organized by plaintiff, as hereinafter stated, plaintiff's indebtedness to his wife on account of the purchase price of the stock, which was not delivered to her at the time of the community property settlement agreement, was equivalent to $660,413.03.

In 1927 the North Negros Sugar Company, Inc., being then the owner of all the stock of the Victorias Milling Company, Inc., caused the stock of the Milling Company to be distributed among the stockholders of the Sugar Company by allocating the same in proportion to the holdings in the North Negros Sugar Company, Inc. The stock of the Milling Company was to be acquired by the stockholders of the Sugar Company by payment in cash or by the Sugar Company holding such stock of the Milling Company and receiving dividends thereon until such time as the dividends should aggregate an amount equal to the par value of the Milling Company's stock so held, plus interest at the rate of 1 per cent. per annum, at which time the stock of the Milling Company was to be delivered to the stockholders of the Sugar Company to whom it had been allocated.

Plaintiff, by reason of his ownership of stock in the Sugar Company, was allocated 24,022 shares of common stock and 5,998 shares of the preferred stock of the Milling Company, and he agreed to purchase this amount under the plan whereby the Sugar Company would hold the stock and receive the dividends thereon until such time as the dividends should

equal the purchase price, plus interest. On May 31, 1932, when the Ossorio Securities Corporation, hereinafter mentioned, was organized, plaintiff owed the Sugar Company a sum equivalent to $401,-935.64.

May 31, 1932, plaintiff caused to be organized the Ossorio Securities Corporation under the laws of the Philippine Islands subject to the hypothecations of stock of the Sugar Company and of the Milling Company. Plaintiff transferred such stock to the Ossorio Securities Corporation for the amount of 562,335 shares out of the total of 562,340 shares of stock of that corporation, the remaining 5 shares being issued to others to qualify as directors. By reason of this last-mentioned transaction, plaintiff insists that he was not taxable upon the dividends declared and paid on the stocks of the Sugar Company and the Milling Company which were used and applied under plaintiff's prior agreement to discharge plaintiff's obligations to his wife under the community property settlement agreement and to the Sugar Company for the purchase price agreed to be paid by plaintiff for the stock of the Milling Company allocated to him.

After June 1 and prior to December 31, 1932, dividends were declared and paid by the Sugar Company on its stock in an amount equivalent to $81,000, so far as concerned the stock deposited by plaintiff to secure payment by him to his wife by application of dividends. This amount was paid to the Bank of the Philippine Islands and was credited by the bank to the account of plaintiff's wife in reduction of the unpaid balance which plaintiff had agreed to pay to her under the community property settlement agreement. The amount of $29,145.30 of the total of such dividends declared and paid was applied against the interest and $51,854.70 against the principal.

During the same period, from June 1 to December 31, 1932, the Victorias Milling Company, Inc., declared and paid dividends in an amount equivalent to $49,-528.50 on the stock of the Milling Company which the Sugar Company had previously allocated to plaintiff under the plan for payment as hereinbefore mentioned. Plaintiff had previously, in May 1932, transferred this stock to the Ossorio Securities Corporation, as hereinbefore mentioned. The Sugar Company

964

credited these dividends of $49,528.50 against the unpaid purchase price of the stock of the Milling Company; $1,308.07 being applied against interest, and $48,220.43 against the principal, in accordance with plaintiff's agreement theretofore made in 1927.

The dividends paid by the Sugar Company and the Milling Company on the stocks of those corporations, which plaintiff transferred to the Ossorio Securities Corporation in May 1932, totaled $130,528.50. The total interest paid to plaintiff's wife and to the Sugar Company pursuant to the agreements previously made by plaintiff was $30,453.38, being $29,145.30 on the indebtedness to plaintiff's wife and $1,308.07 on the indebtedness to the Sugar Company for the stock of the Milling Company.

■ The only question in this case is whether the dividends declared and paid by the Sugar Company and the Milling Company on their stock should, in the circumstances disclosed, be held taxable to plaintiff. The Commissioner of Internal Revenue held that under the circumstances the dividends of $130,528.50 less a deduction of $30,453.38 for interest paid were income to plaintiff for 1932 and assessed and collected upon such income a total tax of $26,184.93. If, in the circumstances, the dividends less the interest paid were taxable to plaintiff, the amount of tax determined and collected by the Commissioner is correct and plaintiff is not entitled to recover. We think the Commissioner correctly held that plaintiff was taxable upon the dividends in question. Although during the taxable period in question the stocks of the Sugar Company and the Milling Company upon which the dividends in question were paid were held by the Ossorio Securities Corporation, such dividends were used and applied to discharge plaintiff's personal obligations strictly in accordance with the personal agreement made by plaintiff long prior to the transfer of these stocks to the Ossorio Securities Corporation. The Securities Corporation was a mere holding company, and we think it is clear that it was organized by plaintiff solely for the purpose of holding these stocks and for the purpose and with the intent of avoiding taxation by the United States to plaintiff of the dividends declared and paid on the stocks of the Sugar Company and the Milling Company,

which, under the existing agreement, were to be used to discharge the principal and interest of his personal indebtedness to his wife and to the Sugar Company.

The theory of separate entities upon which plaintiff chiefly relies is not in every case controlling in the matter of taxation. Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L. Ed. 1439; Gregory v. Helvering, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A. L.R. 1355; Shoenberg v. Commissioner of Internal Revenue (C.C.A.) 77 F.(2d) 446; Asiatic Petroleum Co. (Delaware), Ltd., v. Commissioner of Internal Revenue (C.C.A.) 79 F.(2d) 234.

The definition of "income" in section 22 of the Revenue Act of 1932, 47 Stat. 178 (26 U.S.C.A. § 22 and note), is very broad, and plaintiff, through the medium of his complete ownership of stock of Ossorio Securities Corporation, remained at all times in complete control of the stock from which the dividends in question were derived. For this reason plaintiff was as effectively in possession of the stocks of the Sugar Company and the Milling Company after the Ossorio Securities Corporation was organized as before, and the dividends declared and paid upon the stocks of the Sugar Company and the Milling Company were used in the same manner in which such dividends had previously been applied. The plaintiff in this case was more at liberty to repossess legal title than was the grantor in the case of a trust to pay insurance. Burnet v. Wells, supra.

■ In Gregory v. Helvering, supra, a separate corporate entity was used to pay income to the sole stockholder and, although it was conceded that the provisions of the taxing statute had been fully complied with, the court disregarded the separate entity and held the individual taxable as though the corporation had not existed. The creation of a trust as a means of applying income to the discharge of the personal obligation of the creator leaves the income taxable to him. In such cases the situation must be held to be the same as though the taxpayer had received the income and used it to discharge his obligations. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. The one whose ob-

ligation is thus discharged enjoys the benefit of the income to the same extent as if he had personally received it. In the case at bar, the dividends were taxable to plaintiff before he caused the Securities Corporation to be organized and after organization the dividends continued to be used to discharge his personal obligations. Whether such a corporation may or may not be taxable is not the test. However, in the case at bar the Ossorio Securities Corporation was not subject to tax by the United States on the dividends in question. When a debt or other obligation of a taxpayer is discharged by another for the taxpayer's benefit, income has been received. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918.

In Blumenthal v. Commissioner, 30 B. T.A. 591, the taxpayer owed $33,000 on her note to a trust company, to secure which she had pledged preferred stock. Later she transferred this stock to trustees subject to a lien providing specifically at the time of transfer that the dividends when paid should be applied by the trustees to the liquidation of her indebtedness. The Board of Tax Appeals held that the dividends were taxable to the plaintiff. The Circuit Court of Appeals reversed the Board [76 F.(2d) 507], and the Supreme Court reversed the Circuit Court of Appeals and affirmed the decision of the Board (Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390) on authority of Douglas v. Willcuts, supra.

In the case at bar the amount of dividends on which the plaintiff has been held taxable was applied at plaintiff's direction in discharge of his obligations. He received the full benefit of the income without losing control of the shares thereof. As a part of the transfer of legal title of the stocks of the Sugar Company and the Milling Company to the Securities Corporation, that corporation contracted to pay plaintiff's obligation with the dividends received on such stocks. The mere fact that legal title to the stocks of the Sugar Company and the Milling Company was in the Securities Corporation does not in the circumstances prevent the taxation of the dividends to the plaintiff.

The petition is therefore dismissed. It is so ordered.