COMMISSIONER OF INTERNAL REVENUE v. W. F. TRIMBLE & SONS CO.

No. 6443.

Circuit Court of Appeals, Third Circuit.

Aug. 12, 1938.

854

L. W. Post, of Washington, D. C., for petitioner.

Walter W. McVay, of Pittsburgh, Pa., for respondent.

Before BUFFINGTON, DAVIS and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

The question at issue here is whether or not there was a deficiency in the respondent's income tax for 1932.

On August 4, 1934, the commissioner, by a so-called 90 day letter, notified W. F. Trimble & Sons Company, respondent, that there was a deficiency of $5,921.64 in its income tax for 1932. This deficiency, the commissioner says, consisted of an underpayment of $3,947.76 and a penalty of $1,973.88. The respondent thereupon petitioned the Board of Tax Appeals for a redetermination of its taxes. The Board filed its opinion on July 29, 1936 and on September 2, 1936, it entered an order in which it determined that the respondent had in fact overpaid its income tax for 1932 to the extent of $260.30. From this order the commissioner has appealed to this court.

In this appeal, the commissioner has abandoned all claims to the penalty, and the sole question before us is whether or not the respondent was entitled to deduct a loss which it sustained in the sales of certain stocks.

The undisputed facts of this case are as follows: W. E. Trimble and C. P. Trimble were the president and secretary, respectively, and sole stockholders of the respondent, a corporation engaged since 1903 in the general contracting business. They were also president and secretary and sole stockholders of the Fort Pitt Bedding Company, a corporation engaged since 1906 in the manufacturing of bedding materials. On December 29, 1932, the respondent sold certain securities to the Fort Pitt Bedding Company for $10,120 in cash, the prevailing market price. As a result of this sale, the respondent sustained a loss of $27,442.51. On February 4, 1933, it repurchased the same securities and paid for them in cash. All but 200 shares of these securities were repurchased at the market price then prevailing. The 200 shares were bought at approximately one point above the market.

The respondent, in its 1932 return, deducted $27,442.51 as the loss sustained in the sale of the securities. The commissioner, however, disallowed this deduction.

The Board found that:

"The sales were made for cash at the prevailing market prices. They were bona fide. Within a period beginning 30 days before the date of the sales and ending

thirty days after such date the taxpayer did not acquire, nor did it enter into a contract or option to acquire, substantially identical stocks or securities. * * *

"The evidence shows that the transaction in 1932 was a real sale in which title passed as the parties intended. It was made to reduce income taxes but that fact does not condemn it. It resulted in a loss which the petitioner is entitled to deduct for income tax purposes. * * *"

Section 23(f) of the Revenue Act of 1932 permits corporations to deduct losses "sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C.A. § 23(f). Section 118(a) provides that losses from "wash sales" may not be deducted if "within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date, the taxpayer has acquired (by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction for the loss shall be allowed under section 23(e) (2); nor shall such deduction be allowed under section 23(f) unless the claim is made by a corporation, a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business." 26 U.S.C.A. § 118(a). Article 661 of Treasury Regulations 77 repeats almost verbatim the language of this section.

As the Board found, the respondent in a real business, bona fide transaction as distinguished from a mere paper transaction, brought itself squarely within the four corners of the statute and is entitled to the benefit of its provisions. The evidence supports the finding of the Board to the effect that the respondent has complied with the requirement of the statute entitling it to deduct its loss and this finding is binding upon us.

The commissioner, in appealing from the decision of the Board, filed six assignments of error but relies upon only three of them. In these he contends that the Board erred (1) in holding that the sales were bona fide; (2) in failing to hold that 'the sales were not bona fide, and (3) in failing to hold "that the sales should be disregarded in determining the taxpayer's tax liability".

Assignments (1) and (2) attack the finding of fact made by the Board, but this finding is based upon the uncontradicted testimony of witnesses, and, therefore, we can not disturb it or substitute our judgment for that of the Board. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

The commissioner relies upon the cases of Commissioner v. Riggs, 3 Cir., 78 F.2d 1004, Commissioner v. Troup, 7 Cir., 75 F.2d 1010, and Commissioner v. Dyer, 2 Cir., 74 F.2d 685. He argues that under the rules of law laid down in these cases, the respondent did not suffer a deductible loss.

All of these cases involve the same facts and questions of law. Dyer, Riggs, Lamborn, Logan, Lindgren, Troup and one other, owned all of the stock of Lamborn & Co., which in turn owned all of the stock of the Elanco Realty Corporation. On Nov. 30, 1927, each of these seven men sold some of their stock in Lamborn & Co., at market prices to the Realty Corporation, "each seller participating in the sale according to the percentage of his ownership." In payment for this stock they received promissory notes of the Realty Corporation payable January 3, 1928. On that date they repurchased the stock, again at market price, and in payment, they cancelled the promissory notes and paid a little additional cash. The next year, on November 30, 1928 and January 2, 1929, they repeated the sale and repurchase in the same manner. They paid more for the stock than they received for it and all claimed deductible losses. The Board of Tax Appeals allowed the deductions in every case. The commissioner appealed the Dyer Case to the Circuit Court of Appeals for the Second Circuit, the Troup Case to the Seventh Circuit and the Riggs (Lamborn, Logan and Lindgren[1]) Case to this court.

On January 14, 1935, Judge Swan delivered the opinion in the Dyer Case in which he said (page 686): "It is undoubtedly true that the motive inducing Mr. Dyer and his associates to 'sell and deliver' their stock to Elanco was to reduce taxes by claiming losses on the sales.

---

[1] Combined in opinion of Commissioner of Internal Revenue v. Riggs, 78 F.2d 1004.

This, however, despite the appellant's argument to the contrary, is not enough to condemn the transactions. Any one is privileged to arrange his affairs so that his taxes shall be as low as the statute permits. * * * But the statute does not permit deduction of a loss claimed to have been sustained in a sale of stock where within thirty days before or after the date of such sale the taxpayer has entered into a contract or option to acquire substantially identical property and the property so acquired is held after such sale. * * * In the case at bar, the inference is inescapable that 'repurchase' of the stock by return of the notes was part of the original plan, and that from the beginning the transferors intended to reacquire their shares in this manner."

On January 29, 1935, the Circuit Court of Appeals for the Seventh Circuit, relying on the decision of the Second Circuit in the Dyer Case, filed a per curiam opinion in the Troup Case, reversing the decision of the Board, and on July 18, 1935, this court also reversed the decision of the Board in the Riggs (Lamborn, Logan and Lindgren) Case, stating that, "the case here may be disposed of on the reasoning of Judge Swan" (page 1005) in the Dyer Case. We pointed out in these cases that the taxpayers "did not undergo business losses such as are actually contemplated by the statute, but conceived the losses in paper transactions in order to escape the burden of their tax liability". There was no bona fide business transaction in which the taxpayer ran the risk of actual loss. The transaction in the Riggs Case was a mere bookkeeping arrangement and not a real business transaction.

The Board of Tax Appeals which filed identical opinions in the Riggs, Lamborn, Logan and Lindgren Cases, made no finding of fact as to whether or not the taxpayers had entered into any contract or option to reacquire the stock within the 61 day period. However, the Second Circuit, after calling attention to the fact that the sale and repurchase in 1927–28 had been repeated in 1928–29, stated that "under these circumstances it is as though there had been an agreement between all the transferors and Elanco that the sale should be coupled with a contract, or at least an option, to repurchase".

In the case at bar the Board expressly found that there was no contract or option to repurchase within the 61 day period. As a matter of fact the uncontradicted testimony of the witnesses was that there was no such "understanding either oral, written, expressed or implied"; that there was no reason why the respondent should desire to retain control of these stocks; that the stock was sold to the Fort Pitt Bedding Company, rather than in the open market, in order to avoid paying brokers' commissions; that the repurchase was not considered until the 30 day period following the sale had elapsed, and that there was no particular reason for the repurchase.

That the purpose of a sale may be to establish a loss for income tax purposes, as pointed out by Judge Swan in the Dyer Case, does not of itself constitute a ground for disallowing a deduction. "A taxpayer may resort to any legal method available to him to diminish the amount of his tax liability". Commissioner v. Eldridge, 9 Cir., 79 F.2d 629, 631, 102 A.L.R. 500. See, also, Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Superior Oil Co. v. Mississippi, 280 U.S. 390, 50 S.Ct. 169, 74 L.Ed. 504; Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830.

The fact that W. F. Trimble and C. P. Trimble owned all of the stock of both the respondent and the Fort Pitt Bedding Company, is no ground upon which to deny the respondent the right to deduct these losses. "As a general rule a corporation and its stockholders are deemed separate entities and this is true in respect of tax problems. Of course, the rule is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights". New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; General Finance Co. v. Commissioner, 3 Cir., 85 F.2d 846; Gillis v. Jenkins Petroleum Process Co., 9 Cir., 84 F.2d 74. In the last case cited the court points out that the corporate entity will not be disregarded except where "too close a

relationship between two or more corporations offends a statute or circumvents public policy", or "when necessary to prevent fraud", or "when one company is nothing but an agent of another". None of these circumstances are present in the case at bar. There is obviously nothing contrary to any statute or public policy in the fact that two men own all of the stock of two distinct corporations each engaged in a separate business. The Board found that there was no fraud and in the absence of the other circumstances mentioned above, the mere intention to establish a loss for income tax purposes can not be held to be fraudulent. Nor can either the respondent or the Fort Pitt Bedding Company be termed a mere agent for the other for both are operating concerns, involved in entirely separate and distinct lines of business. The respondent could have sold and repurchased the securities on the open market and deducted the loss. There is nothing in the circumstances of this case that requires a different rule.

The order of redetermination of the Board is affirmed.

BIGGS, Circuit Judge (dissenting).

The question presented for our determination is whether the taxpayer may deduct from its gross income the sum of $27,442.51 as loss upon stocks sold by the taxpayer upon December 29, 1932, to Fort Pitt Bedding Company for the sum of $10,120, and repurchased by it forty-seven days later at an identical price.

The Commissioner contends that the Board of Tax Appeals erred in holding the loss occasioned by the sale to be deductible, claiming that the record discloses that the sales and repurchases were not genuine business transactions of the kind intended by law to form the basis for deductible losses; in short, that the losses sustained were not business losses within the meaning of subsection (f) of section 23 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. § 23(f).

Section 118 of the Revenue Act of 1932, 26 U.S.C.A. § 118, provides that no deductions as losses from "wash sales" of stock may be taken from the taxpayer's income under the provisions of section 23(e)(2) or section 23(f) of the Act, 26 U.S.C.A. § 23(e)(2), (f), where it appears that " * * * within a period beginning 30 days before the date of such

sale or disposition and ending 30 days after such date, the taxpayer has acquired * * * or has entered into a contract or option so to acquire, substantially identical stock or securities * * *".

In Shoenberg v. Commissioner, 8 Cir., 77 F.2d 446, 450, certiorari denied 296 U.S. 586, 56 S.Ct. 101, 80 L.Ed. 414, where a similar statutory provision viz., section 118 of the Revenue Act of 1928, c. 852, 45 Stat. 826, 26 U.S.C.A. § 118, note, was under discussion, it was held that the statutory provision prohibiting a deduction of loss on a sale of stock from taxable net income where the taxpayer repurchases stock sold within thirty days did not serve to validate repurchases after thirty days, where such were part of an original plan involving the sale made the basis of the claimed loss. See, also, Commissioner v. Neaves, 9 Cir., 81 F.2d 947, 949, and St. Louis Union Trust Company v. United States, 8 Cir., 82 F.2d 61, 66. The conclusion that because the repurchase of stock takes place more than thirty days after the sale that that fact alone serves to exempt the taxpayer from the provisions of subsection (f) of section 23 of the Revenue Act, providing for the deduction of business losses from gross income, in my opinion is untenable.

In the case at bar we must determine whether there was a real sale or only a fictitious or pretended sale. In arriving at a decision upon this question the transactions involved must be considered as a whole and not piecemeal. Shoenberg v. Commissioner, supra; Ahles Realty Corp. v. Commissioner, 2 Cir., 71 F.2d 150, 151, certiorari denied Ahles Realty Corp. v. Helvering, 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701.

Viewed in this light, I can distinguish no substantial difference between the principle governing the case at bar and that enunciated by this court in Commissioner v. Riggs, 3 Cir., 78 F.2d 1004, certiorari denied 296 U.S. 637, 56 S.Ct. 171, 80 L.Ed. 453. True that in the Riggs Case the consideration for the transaction of purchase took the form of notes which were cancelled at the time of the repurchase, while in the case at bar actual cash passed from the taxpayer to the Fort Pitt Company and back again. It should be borne in mind, however, that the sole stockholders of the taxpayer and Fort Pitt were W. L. Trimble and C. P. Trimble. The money in effect was passed

from one corporate pocket of the Trimbles to another. The stock itself was taken from one corporate strong box of the Trimbles to another and was never beyond their reach or control. At no time was there any danger of loss occurring to the stockholders of the taxpayer, the Trimbles, by reason of the sales made.

In my opinion we are justified in disregarding the corporate entities of the taxpayer and the Fort Pitt Company in order to arrive at what constitutes the substance of the transactions between the two corporations. Ossorio v. United States, Ct. Cl., 18 F.Supp. 959, certiorari denied 302 U.S. 713, 58 S.Ct. 32, 82 L.Ed. ——; Asiatic Petroleum Co. v. Commissioner, 2 Cir., 79 F.2d 234, certiorari denied 296 U.S. 645, 56 S.Ct. 248, 80 L.Ed. 459.

The transactions in the case at bar were not bona fide business sales and repurchases. They were not such transactions by which a taxpayer might reduce his taxes as the statute intended.

As was stated in the Riggs Case (page 1005), "* * * it is clear that while motive to escape taxation may be of no importance, if the methods used are in reality those intended by the law, it is not always enough that the letter of the taxing statute is followed. The decisive thing is whether or not what has been done is 'the thing which the statute intended.' The taxpayer must bring himself within the intent of the statute upon which he relies, and in the case at bar the taxpayers did not do so." A similar principle was enunciated in Commissioner v. Dyer, 2 Cir., 74 F.2d 685, certiorari denied 296 U.S. 586, 56 S.Ct. 97, 80 L.Ed. 114, and Commissioner v. Troup, 7 Cir., 75 F.2d 1019, certiorari denied 296 U.S. 586, 56 S.Ct. 98, 80 L.Ed. 414.

The opinion of the Board of Tax Appeals points out that there is no proof of any option or agreement for repurchase between the taxpayer and the Fort Pitt Company. Such a finding is pertinent as to whether or not loss from a wash sale is within the provisions of subsection (a) of section 118 of the Revenue Act of 1932, but it is not material upon the question of whether the sales made in the case at bar were bona fide. When the stock of two corporations is totally owned by the two same stockholders, the circumstances of ownership render agreement unnecessary that one corporation will purchase from and then resell shares of stock to the other. The burden of proof of the bona fides of the transactions must be borne by the taxpayer if it is to avail itself of the provisions of subdivision (f) of section 23. The ruling of the Commissioner to the effect that the transactions were not bona fide business transactions is prima facie correct. Nichols v. Commissioner, 3 Cir., 44 F.2d 157; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; United States v. Mitchell, 271 U.S. 9, 46 S.Ct. 418, 70 L.Ed. 799. The taxpayer has not rebutted this presumption by any proof that those who dominated the two corporations did not intend at the time of the sales that there should be first sales and then repurchases.

Under the circumstances I am constrained to the conclusion that the loss is not deductible because it was not incurred by the taxpayer in a bona fide business transaction.

The question presented is reviewable. It is one of law and was so treated by this court in the Riggs Case, and by the Circuit Courts of Appeals of the Second and Seventh Circuits respectively in Commissioner v. Dyer, supra, and Commissioner v. Troup, supra. The Supreme Court ruled to similar effect in Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343. But if the question be deemed to be one of an ultimate finding by the Board, then the question is one of mixed law and fact and is also subject to our review. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755.

For the reasons given I must dissent respectfully from the majority decision of the court. The cause should be remanded to the Board of Tax Appeals with instructions to redetermine the tax of the respondent for the year 1932, striking from the computation of net income the loss allowed by the Board to the taxpayer in the sum of $27,442.51.