## HAMLEN v. UNITED STATES.
### No. 6954.

District Court, D. Massachusetts.
Jan. 31, 1940.

Charles B. Barnes, Jr., of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit to recover income taxes amounting to $7,785.55 with interest, assessed against the plaintiff for the calendar year of 1932.

The only question involved is whether the plaintiff sustained capital losses in this year as a result of the sale by her of certain shares of stock. The statute involved is the Revenue Act of 1932, Chapter 209, 47 Stat. 169, Section 23(e) (2), Section 101 (b) and Section 118(a), 26 U.S.C.A. §§ 23 (e) (2), 101 note, 118(a).

The facts, partly stipulated, are as follows:

1. The plaintiff in the year 1932 was the widow of one Thomas B. Gannett. She has since married and bears the surname of Hamlen. Thomas B. Gannett at the time of his death in 1931 was a partner in the firm of Burr, Gannett & Company, brokers in Boston, and the plaintiff succeeded to his capital interest in that firm, became and was a limited partner during the taxable year in question.

2. A short time after Mr. Gannett's death in 1931, the plaintiff appointed the Old Colony Trust Company, of Boston, Massachusetts, hereinafter called the "Trust Company", her agent in regard to investments. The investment department of the Trust Company was in charge of one Arthur L. Coburn, Jr., and the plaintiff at about this time consulted Mr. Coburn frequently about her investments.

3. On December 10, 1932, said Coburn, who was assistant vice president of the Trust Company, wrote the plaintiff concerning her 1932 income and included an estimated amount of the assessable tax for that year. The writer pointed out the advisability of taking losses before the end of the year for the purpose of reducing her federal income tax. The letter contained a summary of proposed sales of securities held by the plaintiff for more than two years that would have the effect of eliminating a large percentage of the estimated tax. Included in the summary were the shares involved in the present case, namely, 792 of Queen City Cotton Company and 500 of the S. D. Warren Company. There was also included 500 shares of American Can Company and in reference to the latter, the letter stated that "In the case of America Can we have the greatest reluctance to sell, * * *. It would of course be possible to transfer temporarily from American Can to Continental Can

with a return to American after thirty days, if it is your preference that a position in American Can be maintained. This same procedure of reinvestment might of course be applied to any of the items that you might subsequently wish to re-purchase." The sale of the stocks concerned here would involve an estimated loss of about $60,000. They were at this time paying no dividends.

4. Authority was given to the Trust Company by the plaintiff a few days after the receipt of this letter to sell the 500 shares of S. D. Warren Company with instructions to hold up on the Queen City Cotton Company stock until the plaintiff consulted her brother as to the effect of the proposed sale upon the stock control of the company. Her brother was president of the Queen City Cotton Company and the stock was closely held by the members and friends of the plaintiff's family. At this time general instructions were given to the Trust Company to sell through the firm of Burr, Gannett & Company. The brother of the plaintiff offering no objection, orders were given to the Trust Company to sell the Queen City Cotton Stock. The sales of both stocks were made through Burr, Gannett & Company, December 28, 1932 and settlement therefor on December 29, 1932.

5. On January 3, 1933, the Trust Company notified the plaintiff of the sale of the stock and that her account had been credited with the proceeds.

6. Two days later, on January 5, 1933, the Trust Company wrote the plaintiff stating, "We shall also plan to reinvest the money from the Boston bonds in American Can stock after the middle of the month, and to employ other funds for the re-purchase of S. D. Warren Company and Queen City Cotton Company shares."

7. On January 28, 1933, the Trust Company wrote the plaintiff stating that it did repurchase 400 shares of American Can Company and also stated, "We have in mind the repurchase early in the week of the Queen City Cotton and S. D. Warren stocks."

8. On February 1, 1933, the Trust Company notified the plaintiff that it had purchased for her account 792 shares of Queen City Cotton Company at 2⅞ and 500 shares of S. D. Warren Company at 3⅞. The shares were actually repurchased January 31, 1933 and settlement made February 1, 1933.

9. One Edward L. Rantoul was engaged as a trustee in the business of the purchase and sale of investment securities for profit and was a classmate and very intimate friend of the plaintiff's deceased husband, Thomas B. Gannett. He was also a close friend of the plaintiff. He was requested by a representative of Burr, Gannett & Company to purchase the stock in question, which he did at a private sale on December 29, 1932, and later resold them to the same firm January 31, 1933. He made no investigation of the financial condition of the companies before the purchase of the stock and the profit realized by him on the transaction was very small.

10. The sale and repurchase of the stock were made in the usual formal manner. Rantoul made the purchase from his own funds and the money collected from the sale, less commissions, was remitted by Burr, Gannett & Company to the Trust Company and credited to the plaintiff's account. The Trust Company, after charging the plaintiff's account, paid for the repurchase through Burr, Gannett & Company and the latter remitted the amounts received, less commissions, to Rantoul.

11. In December, 1931, the plaintiff, in order to establish a tax loss, which fact was known to Rantoul, sold to him two substantial blocks of bonds which had greatly depreciated in value, through the Trust Company and Burr, Gannett & Company and later, on February 16, 1932, repurchased through the same agencies the identical bonds sold. On this transaction a small loss was sustained by Rantoul.

12. The net capital losses claimed from the sale of securities by the taxpayer on her 1932 return amounted to $221,401.14, and the loss claimed on the shares involved here was $62,284.42.

The plaintiff testified that she had no intention of repurchasing the shares when she authorized their sale and that her sole purpose was to get rid of them. She gave as her reason for reacquiring the Warren Stock, that in the early part of 1933 she talked with a Mr. Wheeler, who was a partner in the firm of Burr, Gannett & Company, and that he advised her that she was making a mistake in selling the stock. She stated, and I find it to be a fact, that the firm of Burr, Gannett & Company was interested in the S. D. Warren Company. She also testified that she decided to reacquire the Queen City Cotton stock "because of the long years of interest my family had

**311**

in the mill." She also testified that she instructed the Trust Company to purchase the identical number of shares sold "when the proper time came to do so."

The witness Coburn, assistant vice president of the Trust Company, testified that the plaintiff did not intimate to him in any way that she wanted to repurchase shares nor did she instruct him to sell them to any particular purchaser. He was unable to state the date the instructions were given to the Trust Company by the plaintiff to repurchase the stocks nor was there any record of it.

The witness Rantoul stated that he had no understanding with the representatives of Burr, Gannett & Company to resell the stocks which he purchased on December 29, 1932. He stated when he bought the stocks he had a fairly good idea they belonged to the plaintiff and were going back to her when he sold them through Burr, Gannett & Company.

Robert W. Mosher, deceased at the time of trial, stated in an affidavit, that was admitted in evidence, that he made an outright sale of the securities to Rantoul upon instructions from the Trust Company and that he had repurchased them from Rantoul upon orders from the Trust Company.

■ From the findings of fact enumerated above and the necessary addition of the material testimony of the witnesses for the plaintiff, it is not the simplest of matters to arrive at the probabilities of truth. However, the burden is upon the plaintiff to establish the fact that the sales to Rantoul were complete and final with no understanding with him as to repurchase in order that the losses involved herein might be deductible. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991.

■ The government, in its brief, points out that the plaintiff's intention in establishing the loss was to avoid the payment of taxes. This is not conclusive upon the question of fact involved in this case, as there is nothing unlawful in such a procedure, if the sales are bona fide. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Helvering v. Johnson, 8 Cir., 104 F.2d 140, 143; Commissioner of Internal Revenue, v. W. F. Trimble & Sons Co., 3 Cir., 98 F.2d 853, 856; Commissioner of Internal Revenue v. Dyer, 2 Cir., 74 F.2d 635, 686.

■ But there are many circumstances present here that force one to conclude that the sales to Rantoul were not complete and final. The suggestion as to tax losses in the Trust Company letter of December 10, 1932 and the repurchase of the same securities after thirty days; the instruction between January 1 and January 5 to the Trust Company, a few days after the sale, to repurchase the identical number of shares sold; the interest of Burr, Gannett & Company, in which the plaintiff was a limited partner, in the Warren stock and the family interest in the Queen City Cotton stock leading to the natural conclusion that the taxpayer would be reluctant to part with her interest in the shares of the two companies; an identical transaction with Rantoul in 1931 to effect tax losses, which it is difficult to believe is nothing more than a coincidence; that Rantoul in 1932 knew he was buying the shares from the plaintiff; the fact that, although Rantoul testified that he bought for profit, he bought the shares knowing both companies had lost money; that Rantoul, out of all the shares of stock sold by the plaintiff to create losses, as far as the evidence goes, purchased only the two blocks of stock here in question; that Rantoul was readily located still in possession of the shares by the agent Mosher; that the identical number of shares were repurchased; that although Rantoul was an experienced investor he made no investigation of the companies involved; that he resold the shares knowing the plaintiff was the purchaser, induce me to conclude that it was not the intention of the plaintiff to dispose of the shares completely and finally at the time of their sale to Rantoul. The inference, which can be justifiably drawn, is that there was a tacit understanding between Rantoul, who had aided the plaintiff in a similar transaction in 1931, and the plaintiff, that the transfer of the shares was a temporary arrangement merely for the purpose of creating a tax loss, that they would be readily available for repurchase and that the taxpayer would repurchase them "when the proper time came to do so."

Although the transactions involved in the transfer and reacquisition of the stock possessed all the customary formalities, yet more and more are the courts drawing aside the veil of mere formality in tax transactions for the purpose of ascertaining the substance.

The plaintiff has not sustained the burden imposed on her in this case, namely, to prove by a fair preponderance of the evidence that the sales were bona fide. Consequently, the losses incurred were not deductible. Rand et al. v. Helvering, 8 Cir., 77 F.2d 450; Shoenberg v. Commissioner of Internal Revenue, 8 Cir., 77 F.2d 446; Commissioner of Internal Revenue v. Dyer, supra.

Judgment for the defendant, with costs.